Argued July 19; affirmed September 19, 1933

# PEDERSON *v.* CITY OF PORTLAND

(24 P. (2d) 1031)

*George D. La Roche,* of Portland, for appellant.

*B. A. Green,* of Portland (R. K. Powell, of Portland, on the brief), for respondent.

RAND, C. J. This is an appeal by the City of Portland from a judgment in favor of plaintiff. The action was brought to recover an alleged balance claimed to be due for labor performed by plaintiff and his fifty-two assignors for the Commission of Public Docks, a department of the City of Portland. The labor was performed between September 20, 1926, and March 9, 1929, and consisted of work done in loading on vessels grain and other cargo for maritime commerce. For such services, the Dock Commission allowed and paid 70 cents per hour for a day's work of eight hours and $1.05, or one and one-half pay, for overtime. Plaintiff, in this action, seeks to recover the difference between the amounts so paid and what would have

been paid if double pay for overtime had been allowed. He bases his right to recover the excess upon section 6721, Oregon Laws, then in force, which provided as follows:

"In all cases where labor is employed by the state, county, school district, municipality, municipal corporation or subdivision, either directly or through another, as a contractor, no person shall be required or permitted to labor, except as hereinafter provided, more than eight hours in any one day, or forty-eight hours in any one week, except in cases of necessity, emergency, or where the public policy absolutely requires it, in which event the person or persons so employed for excessive hours shall receive double pay for the overtime so employed; and no emergency, necessity or public policy shall be presumed to exist when other labor of like skill and efficiency, which has not been employed full time, is available; provided, however, that the provisions of this section shall not apply to state institutions and departments; and provided further, that in the operation or repair of any plant owned or operated by any municipality of this state in any city or town having a population of not more than one thousand inhabitants, any person hereinbefore mentioned may be permitted to labor more than eight hours in any one day, but not more than fifty-six hours in any one week."

The defendant set up accord and satisfaction as a defense to the action and offered evidence showing that plaintiff and his assignors during the period in question were paid regularly every week by checks drawn payable to their order by the Dock Commission, and that all said parties, when receiving their checks, either signed a payroll which recited that the checks were received in full satisfaction of their respective claims or had indorsed upon the checks when delivered a similar recital.

The evidence offered by the city also showed that up to September 20, 1926, all the employees of the Dock Commission had received double pay for overtime, but that on September 10, 1926, a resolution was adopted by the Commission of Public Docks which recited that:

"Whereas, the existing practice of paying double time for all time over eight hours is hurting the Port of Portland in that the costs are thereby made higher than in competing ports, and whereas the shippers are complaining of this practice and threaten to divert from this Port important traffic,

RESOLVED, that for all labor performed in the handling of cargo for shipper or consignee the cost of which is to be paid by shipper or consignee, all time over straight eight hours shall be paid on basis of time and one-half."

This was followed by the giving of notice to the men on September 20, 1926, that one and one-half pay instead of double pay would thereafter be paid where the labor involved was being performed in the handling of cargo for account of shippers or consignees. The evidence further showed that the men, with knowledge that they were to be paid only one and a half pay for overtime, continued to work and receive their checks without any objection being made to the Dock Commission by them. These facts, the city contends, constitute an accord and satisfaction of all the claims sued on.

■■ It is a well settled principle of law, and one to which this court is committed, that where a claim is unliquidated, or in good faith disputed, the acceptance of a check which has indorsed on it that it is received in full satisfaction of the claim operates to discharge the claim. It is also well settled in this state that: "It is not every disputed claim, however, which will support

a compromise, but it must be a claim honestly and in good faith asserted, concerning which the parties may bona fide, and upon reasonable grounds, disagree''. See *Smith v. Farra,* 21 Or. 395 (28 P. 241, 20 L. R. A. 115).

■ Measured by these rules, can it be held that the claims of these laborers were unliquidated in face of the statute, or that there was any bona fide dispute between them and the city as to the amount of compensation to which they were entitled for their services? For, it is equally well settled as a principle of law that: ''If the claim is liquidated or undisputed, no matter how clear the parties agree by writing on a check or otherwise that the claim shall be fully satisfied by an amount less than that due, the agreement is insufficient and the creditor can recover the balance''. See note, 3 Williston on Contracts, section 1854; also see 1 Williston on Contracts, section 124.

It is unnecessary to cite any additional authorities in support of this latter principle other than to say that the Restatement of the Law of Contracts, section 417, announces this principle in these words:

''* * * if the preexisting duty is a matured duty to pay a liquidated sum of money, a subsequent agreement to pay a different sum is inoperative, since if the sum promised is less than the original debt, the debtor's promise is only to perform part of a duty already owing, and therefore is insufficient consideration for any promise while if the sum promised is greater than the original debt, there is insufficient consideration for the promise to pay the excess.''

■■ From this it follows that in order for the city to maintain the defense of accord and satisfaction in this case, it must show that these claims, when they were attempted to be compromised and discharged in the

manner stated, were unliquidated or that there was a genuine dispute between the parties either as to the existence of the claims themselves or as to the amounts due, for otherwise the principle above stated would apply and there could be no valid compromise of them for any amount less than the amounts due. There was no dispute as to the existence of the claims and there could be no bona fide dispute as to the amounts due under the mandatory and inclusive directions of the statute. That statute, although since amended, then expressly provided that the rate of compensation for labor performed overtime for all municipalities within the state should be double pay. The rights and duties of these parties must be measured by the statute as it then existed. While we are not responsible for the enactment of the statute nor concerned with the wisdom of it, it is our duty to interpret it and give to it such force and effect as the lawmakers intended it to have. This we can do only by holding that the receipt and acceptance by the laborers of a part only of the amounts due did not operate to discharge the city of its obligations to pay the full amount provided by the statute. The reasons which impelled the Commission to adopt a resolution providing for the payment of less sums than those provided by the statute, in order to prevent a discrimination against the City of Portland, affords no reason for us to hold that the plain provisions of the statute may or should be disregarded.

■■ However, the city contends that this statute is unconstitutional in that it deprives the city of the equal protection of the laws and impairs its liberty to contract on equal terms with privately-owned docks which render like services in the city of Portland and are by law permitted to pay their employees, while perform-

ing services of the same character, only one and one-half pay for overtime. If this claimed discrimination exists, that fact would not render the statute unconstitutional since it impairs no vested right of the city or of those who have had previous dealings with the city. It must be remembered that the City of Portland is a municipal corporation composed of all inhabitants within its corporate limits. It is a mere agency or arm of the state created for governmental purposes and it derives all its authority from the state. It, therefore, can exercise only such powers as are expressly or impliedly conferred upon it by its charter or some general statute. It may, of course, within the limits prescribed by the constitution, exercise initiative and referendum powers as to local, special and municipal legislation but even as to such legislation, it is now, as it always has been, subject to the constitution and general laws of the state. *Rose v. Port of Portland,* 82 Or. 541 (162 P. 498). As was said in *Mount Pleasant v. Beckwith,* 100 U. S. 514 (25 L. Ed. 699) :

"* * * Corporate rights and privileges are usually possessed by such municipalities; and it is equally true that they are subject to certain legal obligations and duties, which may be increased or diminished at the pleasure of the legislature, from which all their powers are derived.

Institutions of the kind, whether called cities, towns, or counties, are the auxiliaries of the State in the important business of municipal rule; but they cannot have the least pretension to sustain their privileges or their existence upon any thing like a contract between themselves and the legislature of the State, because there is not and cannot be any reciprocity of stipulation between the parties, and for the further reason that their objects and duties are utterly incompatible with every thing partaking of the nature of compact."

See also *City of New Orleans v. New Orleans Water Works Co.,* 142 U. S. 79 (12 S. Ct. 142, 35 L. Ed. 943).

■ Another contention is that, since the city in its employment of plaintiff and his assignors was acting in a private or proprietary capacity, it has the same right to object to the validity of this statute on constitutional grounds that a private individual engaged in the same business would have if the law applied to him. The power of the legislature over municipal corporations free from constitutional restrictions is, as we have seen, much broader than the legislative power over private individuals and, since this was a general statute applicable alike to the employment of labor by all municipal corporations and included all labor when employed in either capacity, the objection upon that ground cannot be sustained, for it was as much within the power of the legislature to fix the rate of compensation for labor employed in one capacity as in the other.

■ The city further contends that the complaint was fatally defective in that it failed to state that there was any necessity, emergency or public policy requiring this work to be performed overtime and that there was no other labor of like skill and efficiency which could have been employed. This objection was made and overruled in *Turney v. J. H. Tillman Co.,* 112 Or. 122 (228 P. 933). In that case the labor had been performed for a contractor who was engaged in the construction of state highways and the controlling statute in that case was almost identical in its terms to the one involved here. That decision is controlling upon this question. Under the allegations of this complaint, it is entirely possible that plaintiff and his assignors may have lawfully been required to perform this labor

and in the absence of proof to the contrary, that presumption must be indulged. But whether or not they were lawfully employed by the city to work overtime, under the ruling in the case last cited, that defense is not available to the city and, since the city had the power to act lawfully in the premises, it ought not, in order to defeat plaintiff's claims, be permitted to say that it acted unlawfully. This principle was announced in *School District v. Schramm,* 142 Or. 296 (20 P. (2d) 241), and we think is applicable here.

Finding no error in the record, the judgment is affirmed.

BELT, J., did not participate in this opinion.