EDGLEY et ux, *Appellants,*
*v.*
JACKSON et ux, *Respondents.*

554 P2d 476

*Milo W. Pope,* Milton-Freewater, argued the cause and filed briefs for appellants.

*Robert W. Collins,* Pendleton, argued the cause and filed a brief for respondents.

Before O'Connell,* Chief Justice, and McAllister, Denecke,** Tongue, and Bryson, Justices.

McALLISTER, J.

*Chief Justice when case was argued.
**Chief Justice when case was decided.

## McALLISTER, J.

This is a suit for specific performance of a land sale contract. The plaintiffs, Mr. and Mrs. Edgley, are the vendees. The trial court held for the defendant vendors, Mr. and Mrs. Jackson. Plaintiffs appeal.

The issues raised on appeal are whether the parties' agreement was sufficiently definite to be susceptible of specific enforcement and whether the agreement had been rescinded prior to the filing of this suit. We do not reach the question of the enforceability of the agreement, because we have concluded that the agreement, even if it was definite enough to support a decree of specific performance, was rescinded by the parties before this suit was filed.

The written agreement, which was prepared by the parties themselves, was signed on July 15, 1973 and acknowledged a part payment or deposit by the plaintiffs in the amount of $1,000. It also provided that the full amount of the down payment was to be $12,000, leaving $11,000 to be paid "when contract papers are completed." The writing does not say which of the parties was to be responsible for having the "contract papers" prepared, nor does it specify a closing date.

On September 8, 1973 Mrs. Jackson attempted to return the $1,000 deposit to Mr. Edgley, who refused to accept it. The evidence is in conflict as to what had taken place in the interim. Mr. and Mrs. Edgley testified that they had been prepared to pay the $11,000 balance of the down payment at any time, that they understood that the Jacksons were to take care of having the contract prepared, and that they had informed the Jacksons that when the contract was ready they would pay the balance of the down payment. Mr. and Mrs. Jackson denied that plaintiffs had ever indicated they were ready to complete the down payment. They testified that they had asked several times when the $11,000 would be ready, and that each time the plaintiffs replied that it would take some

[ 215 ]

time to get the money together. Mr. Jackson admitted that he had taken no steps toward having a contract prepared, nor had he attempted to obtain the consent of his vendor; he testified that he saw no point in taking such steps without knowing that the $11,000 would be forthcoming.

At any rate, on September 8 the Jacksons first attempted to rescind the transaction by returning the deposit. After that date they made several more attempts to do so. On September 17 they sent the money, in the form of a cashier's check, by certified mail to the Edgley home, but Mrs. Edgley refused to accept the letter. On September 24 the Jacksons' attorney mailed the same cashier's check to Mr. and Mrs. Edgley with a letter stating that the Jacksons did not consider themselves bound by the agreement. Mr. and Mrs. Edgley took the letter and check to their attorney, who sent the check back to the Jacksons' attorney, together with a letter inquiring why the Jacksons did not consider themselves bound. Jacksons' attorney replied on September 28:

"The reasons are varied why the earnest money was returned.

"First of all, the balance of the down payment was not paid as agreed and secondly we believe that the earnest money receipt is too vague to be enforceable."

On October 30 Mr. and Mrs. Edgley, through their attorney, sent to the Jacksons' attorney a check for $11,000, together with a land sale contract for the Jacksons' signatures. On November 8 both the $11,000 check and the $1,000 cashier's check were returned with a cover letter stating that the Jacksons "would not enter into the contract in the form presented." On the back of the $1,000 check was written: "Refund of Ernest [sic] money in full." The check was held by the plaintiffs or their attorney until December 1, when it was endorsed by Mr. Edgley directly under the refund notation, and was deposited in the Edgleys' attorney's trust account.

Three days later plaintiffs filed a suit for specific performance. That suit was dismissed without prejudice in March of 1974, and the present suit was filed on April 2.

■ Defendants' contention that the agreement was rescinded on September 8, when the Jacksons first tried to return the $1,000 deposit to Mr. Edgley, is clearly without merit. Even if the Jacksons' evidence is accepted in its entirety, there is nothing in the record to indicate a substantial breach by the Edgleys which would have justified the Jacksons in treating the agreement as terminated on that date. Defendants also contend, however, that the agreement was rescinded by mutual consent on December 1 when Mr. Edgley endorsed the cashier's check and permitted his attorney to deposit it. We agree.

By December 1 the Jacksons had made it abundantly clear that they wanted to terminate their obligations, if any, under the agreement and that for that reason they had been attempting to return the $1,000 deposit. Plaintiffs argue that they had no obligation, when the check was sent to them on November 8, to return it for the fourth time to defendants. We may assume that under the circumstances the physical return of the check was not necessary. Plaintiffs, however, not only retained the check; they also failed to notify defendants of their refusal to consider the transaction at an end, to indicate that the down payment would be held in readiness, or in any way to inform the Jacksons that the tendered return of the deposit was rejected. Instead, Mr. Edgley endorsed the check directly under the writing which recited that the check was a complete refund of the earnest money. The check was then deposited. This amounted to acceptance of the refund on the terms upon which it was tendered.

■■ Mr. Edgley testified that he never intended, by his endorsement of the check, to give up his rights under the sale agreement. This may be true, as the filing of

the first suit for specific performance three days later suggests. Nevertheless, in analogous situations, it has been held that one who accepts and cashes a check which purports by notation or by the terms upon which it was tendered to be in full satisfaction of a disputed claim between the parties has accepted the payment on those terms. This court has recognized the general rule in *Pederson v. Portland,* 144 Or 437, 440, 24 P2d 1031 (1933):

> "It is a well settled principle of law, and one to which this court is committed, that where a claim is unliquidated, or in good faith disputed, the acceptance of a check which has indorsed on it that it is received in full satisfaction of the claim operates to discharge the claim. * * *"

In *Schumacher v. Moffitt,* 71 Or 79, 83, 142 P 353 (1914) the court held that this general rule applies, regardless of the actual intent of the party accepting the check:

> "* * * If the claim was unliquidated and the plaintiff accepted and cashed the check with the words 'In full settlement of account to date' written upon it, it does not matter whether he understood the legal effect of his act or not, or what his intent was when he cashed the check. The legal effect of his act was to satisfy his demand. It was not necessary that he should have understood that the legal effect of the language used would be to estop him from urging payment of an additional amount."

See, generally, 75 ALR 905, supplementing 34 ALR 1035; 12 Corbin on Contracts §1279.

Although our cases have applied this general principle in the context of claims of accord and satisfaction, we see no reason why it should be limited to that context. A rescission of a contract, like an accord and satisfaction, is accomplished by agreement of the parties, whether expressed in words or manifested by conduct. In either context, when one party says, in effect, "Here is your money; if you accept it it is understood that you have no further claims against

me," and the other indicates acceptance by taking and using the money, the acceptance is final.

In the present case the writing on the check and the prior dealings between the parties leave no doubt that the defendants intended, by the return of the $1,000, to terminate the agreement. Plaintiffs must have understood this to be the purpose of the refund. Acceptance and use of the check, under the circumstances, amounted to acceptance of defendants' offer to rescind.

As the agreement of sale had been terminated by the parties prior to the filing of this suit, the trial court did not err in dismissing the complaint. Affirmed, with costs to neither party in this court.