[No. 13029.  Department One.  April 8, 1916.]

LEO BROWN *et al.*, *Respondents*, v. JOHN J. EHLINGER *et al.*,
*Appellants.*[1]

CONTRACTS — CONSTRUCTION — DETAILS — PERFORMANCE—EXCUSE—
PREVENTION BY LAW. Although a written contract, complete in it-
self, for the crushing and removal of rock upon certain lots, provided
that the rock crushing plant might occupy the premises, nonper-
formance is not excused, as being prevented "by law," by reason of
an injunction obtained by an adjoining landower preventing oper-
ation of the crusher installed on the lots; since such occupation was
a mere detail of performance and not of the essence of the contract.

SAME—PERFORMANCE—CONSTRUCTION—INTERLINEATIONS. The fact
that the clause whereby the owner of the lots agreed to the crush-
ing of rock thereon and agreed to àdd sufficient machinery to com-
plete the work was interlined does not change the construction to
be given to the contract, the interlineation or correction not being
challenged for fraud.

APPEAL—REVIEW—FINDINGS. A finding on conflicting evidence
will not be disturbed where the evidence does not preponderate
against it.

Appeal from a judgment of the superior court for Spo-
kane county, Sullivan, J., entered February 4, 1915, upon
findings in favor of the plaintiffs, in an action on contract
tried to the court.  Affirmed.

*Danson, Williams & Danson (Geo. D. Lantz,* of counsel),
for appellants.

*Smith & Mack,* for respondents.

CHADWICK, J.—Respondents brought this action to re-
cover for a breach of contract to remove the rock from cer-
tain lots of land.  The questions raised by the appellants
compel us to set out the greater part of the written contract
which the parties entered into.

"Whereas, first parties are desirous of clearing and ex-
cavating a twelve-foot basement on said lots Nine, Ten,

[1]Reported in 156 Pac. 544.

Eleven and Twelve of Block Thirty-seven of said Railroad Addition, and removing the rock and other material therefrom to the depth of twelve (12) feet from the curb line of Third Avenue, and also removing the rock and other material one-half of the width of the alley down to the street grade in the rear of said lots Nine, Ten, Eleven and Twelve and,

"Whereas, first parties are desirous of paying for the work and labor of removing said rock and other material by giving in exchange the lots in said Boston Heights Addition above described and also that certain rock crushing plant now on said lots above described in Railroad Addition,

"Now, Therefore, in consideration of the mutual promises hereinafter contained, it is hereby agreed between the parties hereto as follows:

"The second parties hereto agree to remove all rock and other material on the above described Lots Nine, Ten, Eleven and Twelve in Block Thirty-seven of Railroad Addition to the city of Spokane, Washington, to a depth of twelve (12) feet below the level of Third Avenue adjacent to said lots, and further to remove all rock and material from one-half of the width of the alley in the rear of said lots, down to the street level, between Madison and Monroe streets, and second parties agree to do all necessary blasting and to furnish and supply all necessary labor and material and to perform all work in the removal of said rock and other material from said premises above described in the manner hereinbefore stated at the cost and expense of said second parties, said work to be completed by January 1st, 1914. . . .

"The parties of the first part hereby agree to permit second parties to use the rock crushing plant now upon said premises, and also the two rock trucks and one dump wagon thereon, and to occupy said lots or any of them with said rock crushing plant for the purpose of removing said rock and other material and crushing rock thereon and second party agrees to add sufficient machinery to complete said work during the life of this contract, and that upon the removal of all of said rock as hereinabove provided the said rock crushing plant, including the two rock trucks and one dump wagon hereinabove described, shall become the property of the second parties, said second parties to assume and

pay all personal property taxes now or hereafter assessed against said personal property."

Appellants rest their defense upon what they claim to be a collateral understanding going to the consideration of the contract, and upon the fact that, while engaged in the work, they were enjoined at the suit of an adjoining property owner from operating the rock crusher which had been installed upon the property.

Respondents insist that the contract is complete in itself and is not to be varied or controlled by oral testimony. Appellants insist that it was the understanding of the parties that the work of crushing and preparing the rock for the market should be done on the premises, and that the contract is so far ambiguous or uncertain as to admit of parol testimony, or if not uncertain in its meaning, that the only fair deduction to be drawn from its stated terms is that the rock was to be crushed on the premises, and that appellants, having been prevented by "the law" from completing the contract, there can be no recovery. The part of the contract particularly relied upon is:

"The parties of the first part hereby agree to permit second parties to use the rock crushing plant now upon said premises, and also the two rock trucks and one dump wagon thereon, and to occupy said lots or any of them with said rock crushing plant for the purpose of removing said rock and other material *and crushing rock thereon and second party agrees to add sufficient machinery to complete said work* during the life of this contract, and that upon the removal of all of said rock as hereinabove provided the said rock crushing plant, including the two rock trucks, and one dump wagon hereinabove described, shall become the property of the second parties, said second parties to assume and pay all personal property taxes now or hereafter assessed against said personal property."

It would seem that no argument or citation of authority is necessary to show that the writing purports to be a complete memorandum of the agreement of the parties.

We are asked to put ourselves in the place of the parties at the time the contract was executed. Respondents were the owners. Their purpose in entering into the contract was to clear their property of rock and to a depth of twelve feet. Appellants were in the business of crushing and selling rock, and entered into the contract, not entirely in consideration of the city lots that were to be conveyed to them, but also because they were securing a supply of native rock to be resold or manufactured into crushed rock. It was no doubt the understanding of the parties that the rock was to be crushed on the premises, and it may be that the appellants would not have entered into the contract if they had not understood that they could crush the rock on the premises. And it may be—it no doubt was—the intention of the respondents to allow the crusher to be operated upon their lots pending the removal of the rock, but these are mere details of performance. They do not go either to the essence or the subject-matter of the contract. Courts cannot set aside contracts because the performance of them becomes more difficult or more expensive than when they were entered into. If it were so, few contracts would survive the seasons of depression that periodically recur in the business world. The testimony in this case shows that the market for rock and crushed rock had gone to pieces after the appellants had agreed to remove the rock, or had established a base of supply, whichever way the case may be stated.

These observations distinguish this case from *Adams v. Washington Brick, Lime & Mfg. Co.,* 38 Wash. 243, 80 Pac. 446. The subject-matter of the contract there considered was a lease of a deposit of clay, at a minimum rental, and with a royalty upon all brick manufactured by the lessee. The lessor had an interest in the manufactured product, and had so far reserved his interest that the parties had agreed that the premises could not be used for any purpose other than the manufacture of brick. The clay deposit was exhausted before the term had expired. It was properly held

that the subject-matter of the contract having ceased to exist, the lessor could not recover.

"It was the existence of the clay that occasioned the making of this lease or contract. The possibilities based upon the assumed extensive existence of said clay prompted these parties to enter into this agreement. The contract was drawn upon the assumption that the clay would last five years. It did not. When it became exhausted, the essence of the entire transaction was gone. That upon which they had planned their operations vanished. The essential, indispensable item was no longer attainable. The foundation of their undertaking was gone. That which was the paramount consideration of the contract failed. While the instrument is a lease in outline, yet its provisions show that brickmaking, instead of being a mere incident, was the prominent purpose contemplated." *Adams v. Washington Brick, Lime & Mfg. Co., supra*, p. 249.

In the same opinion, at page 247, it is said:

"In construing the language of a written contract, that construction should be accorded which is most in consonance with the paramount purpose of the parties at the time of executing the same. It will be assumed that the parties had a purpose in entering into the contract. If the language is susceptible of two or more constructions, it should be given that which would best adapt the agreement to facilitate the accomplishment of the ends evidently sought to be attained."

In the case at bar, the manner of executing the contract, the several purposes of which have been hereinbefore stated, was, in no sense, the "essential indispensable item." The crushing of the rock into a manufactured product, in which, by the very terms of the contract, respondents had no interest or ownership whatever, was a collateral item, a detail affecting the cost of the work which appellants had assumed to do.

And, by the same reasoning, it must be held that appellants are not to be excused because the operation of the rock crusher was enjoined at the suit of some private litigant. Appellants assume that the contract provides that the rock shall be crushed on the premises, and that "the law" has made per-

formance impossible.  The rule, as contended for, seems to be that a person will be excused from the performance of a contract where the performance becomes impossible through the act of God, "*the law*," or by the acts of the other party to the contract.  We might profitably inquire into the meaning of the words, "the law" as they are employed in the text books and cases; the question being whether they refer to legal proceedings instituted by a private litigant, or whether the law refers to some statute which would make the execution of the contract an illegal thing, or possibly to an action begun by or on behalf of the public.  It would seem like an extraordinary proposition to hold that one who had assumed to do a particular work, and who, in the performance of his contract, so conducted his operations as to make of them a nuisance, could, in turn, insist that a decree declaring his methods to be tortious to his neighbor was either the act or operation of the law; for it is a settled principle that every legal act may be done in a negligent manner or in such a manner as to be a nuisance to others.  To apply the rule, we must hold that the place of crushing the rock is of the essence of the contract.  We have demonstrated that it is not.  Respondents had no interest in the crushed rock and, from the nature of things, could have no concern whether the rock was crushed on the premises or elsewhere.  It is only those items or elements in a contract which are seasoned with mutuality that may be called of the essence of it.

Although questioned by counsel, the following cases sustain the holding of the trial judge: *Union Contracting & Paving Co. v. Campbell*, 2 Cal. App. 534, 84 Pac. 305; *Sample v. Fresno Flume & Irr. Co.*, 129 Cal. 222, 61 Pac. 1085.  The cases relied on to establish a contrary holding do no violence to our conclusions, if we treat the place of manufacture as a detail and not of the essence of the contract.  It appeared in the injunction proceeding, as in this one, that appellants had used the place and crusher to crush rock hauled from other places, and they will not now be heard to

say that they could not haul the rock from these premises to some other place and crush it and sell the same at a profit. Whether there is or is not a market for the rock, is a matter of no concern to the respondents. That is a hazard everyone who buys or manufactures for the purpose of sale takes upon himself.

Nor do we think, as appellant insists, that, because the words "*and crushing rock thereon and second party agrees to add sufficient machinery to complete said work*" were interlined, this circumstance gives them the right to open the door and prove that the right to operate the crusher on the lots was the basis of the agreement. Where an alteration or an interlineation appears in a contract and is alleged to be fraudulent or made without the knowledge or consent of a party, courts inquire most freely, not because of the mere fact that there is an interlineation, but because they must first inquire whether the writing is indeed the contract of the parties; whether their minds have met. Where the interlineation is not challenged as fraudulent or as inserted without warrant, it is a part of the contract. It is incorporated into the body of the contract and is subject to the same rules of construction as other words and phrases. As we read the quoted words, they add no element of ambiguity calling for interpretation. When considered in the light of the whole contract, they evidence no more than an intent on the part of appellants to save all future question as to their right to operate a crusher on respondents' land. They voice a permission, not a condition.

The trial judge found the total yardage to have been 37,000. Appellants insist that it was no more than 32,000 yards. There is a dispute in the testimony, and we are not prepared to say that the finding is not sustained by a preponderance of the evidence.

Affirmed.

MORRIS, C. J., MOUNT, ELLIS, and FULLERTON, JJ., concur.