CLAS, Plaintiff, vs. THE STATE, Defendant.

*May 12—June 18, 1928.*

For the plaintiff there was a brief by *Grotophorst, Quale & Langer* of Baraboo, and oral argument by *H. M. Langer.*

For the defendant there was a brief by the *Attorney General* and *Michael J. Dunn, Jr.,* assistant attorney general, and oral argument by *Mr. Dunn.*

DOERFLER, J.   The Department of Agriculture is an agency of the state, and the duties of the commissioner are clearly defined by statute.   In the expenditure of the public moneys he is strictly limited to the sums appropriated by the legislature for a given purpose.   No discretionary power is

vested in him to exceed such appropriations. This is the law not only in this state but elsewhere, and it is incumbent not only upon the department to take cognizance thereof and to act in accordance therewith, but every individual or corporation transacting business with the department is legally governed thereby, whether a contract provides for it or not. In the instant case the plaintiff's attention was directly called to the limitations by an express provision in the contract. After the lapse of a period of approximately three years subsequent to the execution of the contract between the commissioner and the plaintiff, competitive bids were invited for the construction of the addition, and it was then ascertained that, notwithstanding the increased appropriations by the legislature of 1921, the lowest bid exceeded the available funds by $36,300. Naturally no addition was constructed, nor could it be constructed, pursuant to plaintiff's plans and specifications. The plaintiff, therefore, was legally not entitled to compensation. In the first place he was in duty bound, in order to earn compensation, to furnish plans and specifications pursuant to which an addition could be constructed within the amount appropriated for that purpose. No claim herein is made questioning the ability of the architect or as to the faithful preparation of the work he was commissioned to perform; on the contrary, it appears to be conceded that the plans and specifications contemplated a structure harmonizing with the main structure already built.

Independent of the statutory limitations above referred to, the architect, in order to entitle him to compensation, must furnish plans and specifications substantially within the specified amount as to the cost of construction. Whether the construction of a building under specified plans and specifications can be accomplished within the amount fixed by the owner is somewhat speculative. Changes in economic conditions oftentimes frustrate the architect's well-considered calculations, but the provisions of the contract must and do

govern, and the risk ordinarily devolves upon the architect. The following authorities cited in defendant's brief sustain our position with reference to the legal aspects of the case above discussed: *Lord v. New York,* 171 App. Div. 140, 157 N. Y. Supp. 127; *Pierce v. Board of Education,* 125 Misc. 589, 211 N. Y. Supp. 788; *Ritter v. School District,* 291 Pa. St. 439, 140 Atl. 126.

It is argued, however, on the part of plaintiff's counsel, that the fact that the bid received exceeded the amount of the appropriations available does not prevent the plaintiff recovering for the amount claimed to be due under his contract; that the plans and specifications were delivered to the department and accepted by it for and in behalf of the state, and retained, and that they are now still in the possession of the state; that therefore, on that theory, the state is liable for the balance claimed by plaintiff in his complaint. Plans and specifications for construction of a building are of no practical use unless they are employed in actual construction. When used in the construction they become a component part of the building itself, as much so as the material used in construction. In a completed building they manifest themselves in many ways. The appearance of the building depends upon a proper execution of the plans. They may denote either beauty, efficiency, and practicability, or the contrary. In the construction is incorporated also the general engineering plan and project. They therefore become a definite and component part of the structure itself. When the legislature, in contemplation of an expenditure of the money of the state, contemplates the erection of a public building, it has in mind one of the primary requisites in connection with such construction—a well-considered, efficient, and practical plan. Therefore it follows as a logical result from what has been said, that the architect's fees must necessarily be included in the cost of construction.

The defendant in a counterclaim demands recovery of the

sum paid plaintiff in 1919. The pleadings and the record do not show that the attorney general was authorized to prosecute such claim in accordance with the provisions of sec. 14.53 of the Statutes. That being a necessary requisite, the counterclaim must be dismissed.

*By the Court.*—It is therefore ordered and adjudged that the plaintiff's complaint be dismissed, with costs. The attorney general may prepare findings and submit them to the court for approval, together with a proper form of judgment.