[No. 24189. Department One. May 23, 1933.]

CHAS. F. KEANE *et al., Respondents,* v. FIDELITY SAVINGS AND LOAN ASSOCIATION, *Appellant.*[1]

[1]Reported in 22 P. (2d) 59.

*Post, Russell, Davis & Paine,* for appellant.

*Nuzum & Nuzum* and *L. Vincent Donahue,* for respondents.

MILLARD, J.—J. F. McDonald acquired title to land in Spokane for the purpose of erecting thereon an apartment house of the estimated cost of $120,000. McDonald entered into a construction financing agreement with the Fidelity Savings & Loan Association, under the terms of which the former was to put up $45,000 cash and the latter was to advance $75,000 and take a first mortgage on the property. The mortgage was executed and duly placed of record. The general contract for the construction of the building was given in October, 1930, by McDonald to Pete Young, and building operations then began. The loan association advised McDonald, the architect and the general contractor that owner McDonald would be required to advance his money first, and that the loan association's funds would not be available until the building was under roof.

On November 15, 1930, plaintiffs began, under an arrangement with McDonald, to furnish labor and material for the ground work and sewer of the apartment house. On November 19, 1930, four days later, McDonald and the plaintiffs entered into a written contract (the ground work and sewer commenced on November 15, 1930, were included therein) under which the former agreed to pay the latter $16,500 to furnish the plumbing and heating materials and labor for the apartment house. The bonding company that was to furnish to the plaintiffs the bond (required under their contract with McDonald) guaranteeing that the plaintiffs would complete the contract, desired assurance from the loan association that part of the

loan of $75,000 to McDonald would be applied to the plumbing contract; that is, paid direct to the plaintiffs instead of to McDonald. The plaintiffs informed the loan association November 28, 1930, by letter, that the bonding company was insisting upon such assurance in writing, which letter reads as follows:

"Mr. Frankenfield, our bondsman for the Plumbing & Heating contract for the Grand View Apartments, has advised us to request a letter from you, securing our contract price of $16,500, which is payable to Architect's Certificate, monthly, or as the work proceeds.

"Mr. Young, we understand, has a letter of this description from the mortgagee, securing him to the full amount of his contract.

"While we did not feel such procedure was necessary, still at the insistence of our bondsman, we ask that you kindly send us a letter of this nature, relative to the Mortgagee's letter as received by Mr. P. Young."

On the same date, in reply to that letter, the defendant delivered to the plaintiffs and to the surety on plaintiffs' bond the following memorandum:

"Fidelity Savings and Loan Association
"United States Fidelity and Guaranty Co.
"c/o Old National Bank and Union Trust Co.
"Keane Patterson Plumbing Company
"Spokane, Washington.
"Gentlemen:

"Upon the issuance of Completion Bond covering Keane Patterson Plumbing Company, plumbing and heating contractor for the J. F. McDonald's apartment building located on lots 7 and 8, Block 1 of Fern Hill Addition to Spokane, we agree to pay to Keane Patterson Plumbing Company by architect certificates, through G. A. Pehrson, architect, and J. F. McDonald, owner, $15,000, said $15,000 to be used in payment of labor and material performed and used on the apartment building according to the plumbing and heating contract specified between Keane Patterson Plumbing

Company, and J. F. McDonald, owner, dated Nov. 19th, 1930. Fidelity Savings & Loan Association "By W. H. Campell, Vice-President."

The completion bond mentioned in the foregoing written assurance of the defendant was issued by the United States Fidelity and Guaranty Company, and was by the plaintiffs delivered to the defendant, as it required. The general contractor ceased construction in December when the architect's certificate issued to him was not paid by McDonald. This created a condition which precluded continuance by plaintiffs of their work on the building. The last work performed by plaintiffs under their contract was about the middle of December.

During November and December, 1930, the plaintiffs completed a little less than one-fourth of their work under the contract; that is, during those two months, the actual expenditure by plaintiffs for labor and material on the apartment house amounted to $2,688.90. On the last day of December, 1930, plaintiffs' demand upon the architect for payment of that sum was rejected. In February, 1931, the plaintiffs' demand upon the defendant for payment was refused. The plaintiffs were informed that the defendant would no longer proceed under the contract; that it intended to release its mortgage of $75,000 on the property. On March 3, 1931, the defendant released that mortgage.

In June, 1931, plaintiffs presented to the defendant, through the architect and McDonald (the owner), an architect's certificate covering plaintiffs' expenditures for labor and material and demanded payment thereof. The demand was refused. Thereupon, this action, which is based upon defendant's written assurance of November 28, 1930, quoted above, was instituted by plaintiffs for recovery of the amount of plaintiffs' expenditures for plumbing and sewer work, as here-

tofore described. Defendant answered that it had agreed to pay certain moneys direct to plaintiffs rather than to McDonald, as they became due to McDonald, but that none such had ever become due. Defendant pleaded as an affirmative defense that, whatever claim plaintiffs may have had, the same was compromised and settled by the following agreement of August 19, 1931, between McDonald and his creditors, including the plaintiffs:

"AGREEMENT

"WHEREAS, The undersigned are creditors. of J. F. McDonald and Mary B. McDonald, his wife, of Spokane, Washington, each having furnished labor and material, either or both, which was used on the improvements as now located on Lots Seven (7) and Eight (8), Block One (1) Fernhill Addition to the City of Spokane Falls (now Spokane) Washington. Title to such real property now being in said McDonalds.

"AND WHEREAS, such creditors have filed liens and the time in which to commence foreclosure of such liens is about to expire.

"AND WHEREAS, said McDonalds claim an equity in and to said real property of at least $2,500.

"AND WHEREAS, said creditors desire to obtain title to said real property and thus save the cost of foreclosure and the delay of the period of redemption thereafter.

"In consideration of the payment to said McDonalds of the sum of $500, receipt of which is hereby acknowledged and the allowance of the claim of said McDonalds' of $2,500 as hereinafter more fully provided, said McDonalds do hereby agree to forthwith sign and deliver a quit claim deed conveying all their right, title and interest in and to said real estate and the improvements located thereon. The Old National Bank & Union Trust Company of Spokane, a corporation, is to be the grantee in said deed, which corporation shall act as trustee for the benefit of such creditors.

"It is understood and agreed by all the parties hereto that the claim of $2,500 of said McDonalds on which $500 or 20% of the sum has this day been paid

shall be of equal rank with all other creditors and shall be paid in the same proportion as all other creditors after, however, all other creditors shall have been paid 20% of their respective claims.

"It is understood and agreed by and between all parties hereto that the person, persons, firms or corporations advancing such sum of $500 which has this day been paid to said McDonalds shall be the first paid the amount of such advances from any funds derived or realized from the sale or any disposition of such real property; that when each creditor excepting said McDonalds shall be paid up to 20% of their said claims and any costs of the said trustee which shall include a reasonable fee to said trustee shall be paid then all sums over and above that shall be pro-rated equally amongst all creditors.

"It is understood and agreed by and between all parties hereto that a committee to consist of H. O. Schumacher, C. L. Coffman, G. Albin Pehrson, Samuel Patterson and Peter J. Young shall be and is hereby appointed by said creditors and that committee shall have and is hereby granted full and complete charge of said real property together with the right to sell and dispose of the same in such a manner as shall in its judgment be wise. Further, that in the event said committee shall be unable to agree upon a proper sale or a proper disposition of such property thereupon any agreement which shall be reached by any three members shall be binding and conclusive on said committee and said Old National Bank & Union Trust Company is hereby authorized and directed to deed such real property to such person, persons, firm, or corporation as shall be in writing designated by said committee or any three members of the same.

"It is understood and agreed by and between all parties hereto that the claim of architect G. Albin Pehrson, which shall be recognized in this group shall be $3,500.00 and that said Pehrson shall be paid the same percentage of the said claim as shall be received by the other creditors to this agreement. Said Pehrson hereby agrees that in the event said building is to be completed by this group that he shall be employed

as architect and to superintend the construction of said work and that his compensation for the same shall be $2,000.

"Creditor Amount of Claim

. . . . . . . . . . . . . . . . . . . . . .
"Keane-Patterson Plumbing & Heating Co.............................$1951.50
"By Samuel Patterson—Boiler............ $984.50
. . . . . . . . . . . . . . . . . . . . . .
"J. F. McDonald........................$2000.00"

The cause was tried to the court, which found that the defendant was indebted to the plaintiffs for labor and material in the amount claimed, and that the trust agreement pleaded as a defense to the action

" . . . was entered into for the purpose of avoiding the expense necessary to foreclose certain liens that had been filed by the said creditors against the said property, and to avoid the period of redemption in case the said liens were foreclosed and said agreement was not entered into for the purpose of releasing either McDonald or the Fidelity Savings & Loan Association from their obligations to the plaintiffs."

Judgment was entered accordingly. The defendant has appealed.

Appellant contends that its written agreement, quoted above, to make payment direct to respondents as the work progressed, instead of remitting to McDonald, who, in turn, would pay the respondents, was without consideration—a mere *nudum pactum.*

Respondent Patterson, as a witness, was confused and could not recite, chronologically, the facts leading up to the controversy out of which this action arose. However, it fairly appears from his testimony and other evidence in the record before us that, if the appellant had refused to give the written assurance of November 28, 1930, the respondents would not have proceeded with the work. It is hardly conceivable that

the appellant would have orally and in writing assured the respondents as it did, if there had been an absence of necessity therefor. We agree with the view expressed by the trial court as follows:

"It must be inferred from the testimony of Mr. Patterson that at the time of his conversation with Mr. Campbell, although he had not definitely abandoned the contract, he was in a state of doubt as to proceeding with it, and that in order to induce him to go ahead promptly with the work so that the construction of the apartment would not be delayed, the assurance as to the apportionment of the $15,000 out of the total amount of the loan by the defendant upon the property was given. On the receipt of this assurance the plaintiffs went ahead with the work under their contract, and it cannot with reason be assumed that except for that assurance the plaintiffs would have proceeded with the work.

"The language of the letter from the Fidelity Savings & Loan Association by Mr. Campbell as its vice-president is positive and unequivocal. By the terms of that letter, upon the issuance of the completion bond, the defendant agreed to pay to the plaintiffs by architect's certificates through G. A. Pehrson, architect, and J. F. McDonald, owner, $15,000, to be used in payment of labor and material performed and used on the apartment building according to the plumbing and heating contract between the plaintiffs and the owner dated November 19, 1930. As to the balance of the contract amount, namely, $1,500, the plaintiffs were to look to the owner of the property.

"Counsel for the defendant in his brief takes the view that the conversation between Mr. Patterson and Mr. Campbell as to where the money was coming from occurred after the writing of the letter by the defendant. Counsel recognizes, however, that the witness was very confused as to his dates and conversations. It is indeed difficult from the testimony of the witness to determine the sequence of events, but we cannot with reason believe that Mr. Patterson was inquiring or speculating as to where his money was coming from

after having received both the verbal assurance and the letter from the defendant. . . .

"The reasonable conclusion would seem to be that the plaintiffs would not have gone on with their contract without assurance as to the source from which the money was coming; and it is difficult to believe, moreover, that the defendant would have given both its verbal and written assurance in so important a matter unless it realized fully the necessity for doing so."

There was an adequate consideration for the promise made by the appellant. The respondents were unwilling to proceed with their contract until assured by appellant of payment. Appellant was interested in the performance of the contract; that is, the profit (interest on the loan to McDonald, also payment of the principal) accruing to the appellant was dependent upon the completion of the building. The promise was made, the assurance of payment was given by the appellant, as an inducement to the respondents to continue the plumbing and heating construction.

We concede the correctness of the rule upon which appellant relies; that is, the mere promise to do what one is by law or contract obligated to do is not a good consideration for a promise to pay. However, where, as in the case at bar, the party refuses to go on with the contract unless assured, as respondents were assured by appellant, of payment, the promisor will not be heard to say that the contract was without consideration, therefore not enforceable.

"If A. has refused or hesitated to perform an agreement, with B., and is requested to do so by C., who will derive a benefit from such performance, and who promises to pay him a certain sum therefor, and A. thereupon undertakes to do it, the performance by A. of his agreement in consequence of such request and promise by C. is a good consideration to support C's

promise." *Abbott v. Doane*, 163 Mass. 433, 40 N. E. 197, 47 Am. St. 465, 34 L. R. A. 33.

In principle, *Evans v. Oregon & Washington R. Co.*, 58 Wash. 429, 108 Pac. 1095, 28 L. R. A. (N. S.) 455, is to the same effect.

 Appellant next contends that, even if it did agree to pay the fifteen thousand dollars or guarantee its payment, the subsequent agreement (quoted above) between McDonald and his creditors, including the respondents, released the appellant from further liability.

Appellant was either jointly liable with McDonald or appellant was a guarantor. In either event, a settlement by respondents with McDonald under which the respondents released their claim against McDonald would operate as a release of the appellant.

Counsel for respondents argue that:

"What the parties really intended to do is clearly set forth in the agreement. They wanted to salvage from the debris what little they could, and to expedite this worthy motive they all agreed they would pool their interests in the property by placing it in the hands of a trustee, thereby saving the expense of foreclosing numerous liens."

The obligation of McDonald to pay was altered to the extent of taking title to real estate instead of cash. By the agreement, the obligation of McDonald was discharged. The language of the agreement permits of no other reasonable interpretation. That being so, the discharge of the principal (McDonald) released the appellant, if it were a guarantor. *Duke v. Benson*, 134 Wash. 495, 236 Pac. 77.

If the appellant were a joint obligor, the discharge of its co-joint obligor (McDonald) operated as a discharge of the appellant.

"The general rule that the discharge of one joint debtor discharges his co-joint debtors is applicable to

a discharge of one joint debtor by way of accord and satisfaction." 1 R. C. L. 201.

The judgment is reversed, and the cause remanded with direction to dismiss the action.

BEALS, C. J., MITCHELL, and HOLCOMB, JJ., concur.