

# THE ATTORNEY GENERAL
# OF TEXAS

### AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

June 15, 1959

Honorable William J. Burke
Executive Director
State Board of Control
Austin, Texas

Opinion No. WW-646

Re: Questions relating
to Engineering Fee
for Design of Filter
Systems for Swimming
Pools in three State
Parks for the State
Parks Board.

Dear Mr. Burke:

You have requested an opinion of this office in regard to questions you have predicated upon the following facts:

On or about October 1, 1957, the State Parks Board requested the Board of Control to select an architect and/or engineer to design swimming pool filter systems for the Abilene, Bastrop and Lockhart State Parks.

Roger L. Erickson, consulting engineer and architect, was selected and a contract entered into whereby he was to prepare plans and specifications for the filter systems. Upon completion of plans and specifications for the filter systems, Mr. Erickson received partial payment for his services at the rate provided for in his contract. Payment was based upon vouchers which showed on their face an estimated cost of $30,200 for the three filter systems.

Bids were called for by the Board of Control and were opened and tabulated on August 20, 1958. The low bids received for the filter systems, based on Mr. Erickson's plans and specifications, totaled $70,471.00. The appropriation available to the State Parks Board was $32,194.00, therefore, the bids were rejected by the Board of Control.

After the bids were rejected, Mr. Erickson forwarded to the Board of Control, at the request of the Board, his final pencil estimates which totaled $77,035.00 for the three filter systems.

After rejection of the bids, Mr. Erickson received warrants from the Comptroller of Public Accounts for additional engineering fees calculated on the basis of the lowest bona fide bid received. The vouchers upon which these warrants were issued were approved by the State Parks Board, but were not approved by the Board of Control. Mr. Erickson still holds these warrants at this time.

The questions you submit are as follows:

"1. In view of the fact that the lowest bona fide bid received would over-run the available funds and, therefore, no award could be made, is an engineering fee based on the lowest bona fide bid received a legal obligation accruing to an engineer and payable on that basis?

"2. In view of the fact that Mr. Erickson now has in his possession warrants issued payable to him that were based upon the lowest bona fide bids received, should Mr. Erickson now return those warrants to the Comptroller for cancellation?"

In considering your first question, we look to the appropriation bill by which the expenditures for filter systems were authorized. In the General and Special Laws, 55th Legislature, Regular Session, 1957, House Bill No. 133, we quote from the appropriations to the State Parks Board line items Nos. 25, 29, and 57:

| | For the years ending | |
|---|---|---|
| | Aug. 31,1958 | Aug. 31,1959 |
| "25. Abilene State Park | | |
| b. Improvements, including 15 concrete Picnic units, and filter system for swimming pool ......$9,894 | | $1,000 |
| "29. Bastrop State Park | | |
| b. Improvements, including filter system for swimming pool, repair of 11 cabins, rest rooms, tables and grills .....................$9,800 | | $3,765 |

| | For the years ending |  |
|---|---|---|
| "57. Lockhart State Park | Aug.31,1958 | Aug.31,1959 |
| b. Improvements, including construction of filter and circulating system for pool, garage and storeroom, fencing of swimming pool area, 10 picnic tables and grills, and the construction and equipping of playground area. ........ | $12,500 | $5,625" |

It is well settled in Texas, that the contract of an agent or agency of the State made in excess of an amount appropriated by the Legislature is void and no subsequent action of the Legislature may validate a claim arising thereunder. Such a claim, not having been provided for by pre-existing law, is prohibited by Section 44 of Article III of the Constitution of Texas. Ft. Worth Calvary Club, Inc. v. Sheppard, Comptroller, 125 Tex. 339, 83 S.W.2d 660 (1935); Nichols v. State, 32 S.W. 452 (Tex. Civ.App. 1895, error ref.). The bids, based upon the plans and specifications of Mr. Erickson, were called for, received, opened and tabulated prior to the time the 1959 appropriation became available. Therefore, the total sum available under pre-existing law at all times here in question was $32,194.00, and a contract for the expenditure of a sum in excess of this amount would be invalid.

Mr. Erickson's contract, called an "Engineering Agreement" by the parties thereto, provided in part as follows:

"4. Payments. Payments to the Architect on account of his fee shall be made as follows, subject to the provisions of Article 3 hereof:

"Upon completion and approval by the Owner of preliminary studies, a sum equal to twenty per cent (20%) of the basic rate computed upon a reasonable estimated cost;

"Upon completion and approval by the Owner of specifications and general working drawings, a sum sufficient to increase the payments to fifty per cent (50%) of the basic rate based on a reasonable estimated cost;

"Upon awarding of the contract, or if no contract is awarded within ten (10) days of opening of bids, a sum sufficient to increase the payments to seventy-five per cent (75%) of the basic fee, based on the lowest bona fide bid. (Emphasis ours)

"It is understood that the above-mentioned estimated cost shall, in no event, exceed the amount of the appropriation (from whatever source) for the work."

Mr. Erickson bases his claim for compensation on the above underlined clause of his contract in spite of the fact that the lowest bona fide bid exceeded the appropriation available and no contract for the filter systems could be entered into.

In considering the legal consequences of the contract and the facts presented, we must of necessity be governed by the basic fact that Mr. Erickson was not dealing with an individual but with an agency of the State which was limited in its authority to make expenditures.

In Volume 6, Corpus Juris Secundum, Architects, Section 14, page 310, it is stated as a general rule:

"Where plans are required for a building not to cost more than a certain sum, or are accepted on condition that it can be erected for a given amount, there can be no recovery by the architect unless the building can be erected for the sum named, or at least for a sum substantially within the limit, unless the increased cost is due to special circumstances, or to change of plans by the owner's directions. . . ." (Emphasis ours) Emmerson v. Kneezell, 62 S.W. 551 (Tex.Civ. App. 1900); Dudley v. Strain, 130 S.W. 778 (Tex.Civ.App. 1910); Capitol Hotel Co., Inc.

et al v. Rittenberry, 41 S.W.2d 697 (Tex. Civ.App. 1931, Writ dismissed); Stratton v. City of Detroit, 246 Mich. 139, 224 N.W. 649 (1929).

Quoting further from the same source and page, we find:

"Where the architect knows or should know of the authorized limit, the rule applies, although he is dealing with a legislative committee or with a municipality." (Emphasis ours) Clas v. State, 196 Wis. 430, 220 N.W. 185 (1928); Brickle v. England, 25 Del. 16, 78 Atl. 638 (1910).

The Wisconsin Supreme Court, in Clas v. State, 220 N.W. 185 (1928), a case where the bids based on the architect's plans exceeded the appropriated amount, denied that the architect was entitled to any compensation and, on page 185, had this to say about the limiting nature of an appropriated sum on a state agency and those dealing therewith:

". . . the expenditure of the public moneys . . . is strictly limited to the sums appropriated by the Legislature for a given purpose. . . . it is incumbent not only upon the department to take cognizance thereof and to act in accordance therewith, but every individual or corporation transacting business with the department is legally governed thereby, whether a contract provides for it or not." (Emphasis ours)

Regardless of whether or not Mr. Erickson had actual knowledge of the amount of the appropriation for the filter systems involved, such appropriations are a matter of public record and the authority of the agencies with which he was dealing was limited thereby, therefore, he was bound to know or should have ascertained the amount of such appropriation. Cooper v. City of Derby, 83 Conn. 40, 75 Atl. 140 (1910); Horgan & Slattery v. City of New York, 114 App.Div. 555, 100 N.Y. Supp. 68 (1906); Pierce v. Board of Education, 125 Misc. 589, 211 N.Y. Supp. 788, affirmed in 216 App.Div. 787, 214 N.Y. Supp. 904 (1926); Clas v. State, 196 Wis. 430, 220 N.W. 185 (1928); See Bernstein et al v. City of

New York, 143 App.Div. 543, 127 N.Y.Supp. 987 (1911);
Smith v. Dickey, 74 Tex. 61, 11 S.W. 1049 (1889).

Indeed the last paragraph of that portion of Mr.
Erickson's contract quoted above apprises him of the
fact that there is some appropriated amount limiting the
project. The burden was on him to find out what it was.

In view of the foregoing authorities, it is our
opinion that where an architect contracts with an agency
of the State to furnish plans and specifications for some
objective for which the amount to be expended is governed
by a Legislative appropriation, the architect shall be
deemed to have knowledge of the amount of the appropria-
tion and the law will imply, as a condition in his con-
tract, that the objective be capable of accomplishment
within the appropriated amount by use of the plans and
specifications furnished or else he is not entitled to
compensation for his work. We do not mean to say that
there would not be instances where the architect would
be allowed to make minor revisions to bring the plans
and specifications within the appropriated amount and thus
fulfill his contract, but where this can not be done, the
architect has not complied with the contract. Such is the
situation in the case at hand.

Mr. Erickson furnished plans and specifications
upon which the lowest bids received totaled $70,471.00.
The amount appropriated was less than one-half this amount,
to-wit: $32,194.00. Indeed the pencil estimates made by
Mr. Erickson, at some date unknown, but which were not given
to the Board of Control until after bids were received, came
to a total of $77,035.00. The bids were well within the
pencil estimates of Mr. Erickson, but were far in excess of
the appropriation to the State Parks Board for the filter
systems; so far in excess that minor revisions could not
bring the plans and specifications within the appropriated
funds. Therefore, it is our opinion, that since the lowest
bona fide bid received was greatly in excess of the appro-
priation available and no legal contract could be let, Mr.
Erickson did not fulfill his contract and no legal obliga-
tion based on the lowest bona fide bid accrued to him.
Consequently, your first question is respectfully answered
in the negative.

The answer to your second question follows as a
matter of course from our answer to your first question.
Since Mr. Erickson did not fulfill the condition in his

contract implied by law, no legal obligation arose thereunder. Therefore, in our opinion, the warrants now in the possession of Mr. Erickson should be returned to the Comptroller for cancellation since they were not issued in payment of a legal claim or obligation. Your second question is, therefore, answered in the affirmative.

## SUMMARY

Where an architect is employed to prepare plans and specifications for filter systems for swimming pools located in three State parks, he is required by law to know or ascertain the amount appropriated to the State Parks Board for that purpose. Where the lowest bona fide bid, based upon the plans and specifications submitted, was $70,471.00 and the amount of the appropriation to the State Parks Board was $32,194.00, no legal contract for the filter systems could be entered into and the architect is not entitled to a fee based on the lowest bona fide bid under these circumstances. Warrants now in the possession of the architect for an engineering fee based on a low bona fide bid which exceeded the appropriation are not in payment of a legal obligation and should be returned to the Comptroller for cancellation.

Yours very truly,

WILL WILSON
Attorney General of Texas

By W. O. Shultz
Assistant

WOS:zt:rm

APPROVED:

OPINION COMMITTEE
Geo. P. Blackburn, Chairman

Robert T. Lewis
C. Dean Davis
J. Arthur Sandlin
Henry G. Braswell

REVIEWED FOR THE ATTORNEY GENERAL
BY:  W. V. Geppert