[No. 34752. *En Banc.* March 17, 1960.]

STANTON WARBURTON, JR., *Individually, and as Secretary of the Pierce County Taxation Bureau, Appellant,* v. TACOMA SCHOOL DISTRICT NO. 10 *et al., Respondents.*[1]

[1]Reported in 350 P. (2d) 161.

*Hugo Metzler, Jr.* and *Allan L. Overland,* for appellant.

*Northstrom, Dolack & Hansler,* for respondents.

OTT, J.—Gordon Norman Johnston, a licensed architect, entered into a contract with the board of directors of Tacoma school district No. 10 to prepare plans, secure bids, and supervise the construction of an addition to the Sheridan elementary school, at a cost not to exceed $212,102.45, for

an agreed fee of six per cent of the total accepted bid. The employment contract provided, *inter alia:*

"ARTICLE II. The Architect's professional services consist of necessary conferences, preparation of preliminary studies, working drawing, specifications, large scale and full size detail drawings, the drafting of forms of proposals and contracts, all of which shall be approved by the Owner before submitted to bidders and before execution, the issuance of certificates of payment, keeping of accounts, general administration of the business and supervision of the work.

. . .

"ARTICLE VII. EXTRA SERVICES AND SPECIAL COSTS: If, after a definite scheme for the building has been approved, the Owner makes a decision which, for its proper execution, involves extra services and expenses for changes in or additions to the drawings, specifications and other documents, or if the Architect is put to labor and expense by delays caused by the Owner or Contractors, or by the delinquency or insolvency of the Contractor, or as a result of damages to the building by fire, he shall be equitably paid for such extra services and expense, the amount of which shall be determined prior to the rendition thereof.

"Should the execution of any work designated or specified by the Architect, or any part of such work, be abandoned or suspended, the Architect is to be paid in accordance with or in proportion to the terms of Article VIII for the services rendered on account of it, up to the time of such abandonment or suspension. . . .

"ARTICLE XVI. It is hereby understood that the Owner has available for the construction or modification of said building, including incidental site development, the sum of $180,000.00, and it is agreed by the Architect and the Owner that in the event the estimate of costs and/or bids for construction of said building or modification shall exceed such sum or shall exceed the maximum per square foot cost allowable for the designed type of building by the State Department of Education, the Architect shall revise such plans and specifications, with the approval of the Owner, until the estimated cost and/or minimum responsible bidder's bid will come within such sums."

The architect's plans and specifications were approved by the board, and bids were received. The lowest bid, in the sum of $310,892.67, was rejected by the district, after attempts to negotiate failed. Thereafter, preparatory to an-

other call for bids, the board ordered the architect to alter the originally adopted plans and specifications in the following particulars: (1) change the design of the proposed annex by attaching it to the existing structure, instead of building a separate structure connected by covered passageways, as originally planned, (2) provide for alternate plans and specifications and for alternate bids with reference thereto, and (3) substitute less expensive materials for the original, more expensive, materials which had added principally to the building costs.

The architect revised the plans and specifications, as requested by the board, and, thereafter, a bid of $239,223.39 was received and accepted. The building was constructed, and the architect received a fee for his services of six per cent of the bid.

October 31, 1956, before the completion and acceptance of the annex and the full payment of the basic fee, the architect billed the district for additional professional services, in the sum of $3,446.56, as follows:

"Addition to Basic Fee for Redesign work due to necessity of Rebidding the Addition to the Sheridan Elementary School.

| | |
|---|---|
| "Architectural Redesign .............. | $1,360.00 |
| "Smith & Murray, Structural Engineers | 1,288.75 |
| "Walter S. Gordon, Electrical Engineer.. | 340.46 |
| "David M. Hopkins, Mechanical Engineer | 197.08 |
| "Tacoma Blueprint Company .......... | 191.71 |
| "Graham Blueprint Company .......... | 68.56 |
| "TOTAL AMOUNT DUE.............. | $3,446.56" |

The allowance of the claim was questioned by the Pierce County Taxation Bureau and interested persons. The board requested its attorney to furnish a legal opinion as to the validity of the architect's claim. He recommended that the claim be disallowed. The opinion of the attorney for the architect was contrary to that of the school district's attorney, and a deputy prosecuting attorney for Pierce county concurred in the opinion of the attorney for the architect.

After several public meetings and conferences had been held, the board and the architect, upon advice of their re-

spective attorneys, entered into a written agreement of compromise and settlement which reads, in part, as follows:

"WHEREAS, after considerable negotiations by the Architect, the School District, by Resolution of August 9, 1956, rejected all bids and directed the Architect to revise the plans and call for new bids; and

"WHEREAS, the Architect re-drafted the plans, which were approved by the School District, new bids were called for, contracts let, and the Sheridan addition is now under construction; and

"WHEREAS, a bona fide dispute as to the legal meaning and effect of the agreement of June 23, 1955 and as to the rights and liabilities of the parties has arisen; and

"WHEREAS, after considerable negotiations between the School District and the Architect, and their respective attorneys, the parties are desirous of reaching a mutually satisfactory accord of their differences;

"Now, THEREFORE, it is agreed between the parties hereto that the School District shall pay to the Architect the sum of $3,019.69 in addition to the amount agreed upon in their contract of June 23, 1955, in full satisfaction of all claims by the Architect for additional compensation by reason of any and all extra work and expenses incurred or to be incurred by the Architect in regard to the said addition to Sheridan School as a result of the events and circumstances heretofore set forth."

May 31, 1957, the Pierce County Taxation Bureau was apprised of the action of the school board, and was informed that the claim would be presented for payment by warrant on June 10, 1957. The prosecuting attorney for Pierce county declined to institute an action to enjoin the board from issuing the warrant. Thereafter, Stanton Warburton, Jr., individually, and as secretary of the Pierce County Taxation Bureau, commenced this action against the school district to enjoin and restrain it from issuing the warrant in payment of the claim. Whether the plaintiff had the capacity to seek such relief was not questioned; hence, his capacity to sue is not an issue in this proceeding.

The complaint alleged, *inter alia*, that the claim lacked consideration, and that the compromise settlement agreement to pay it was void for the same reason. The school district's answer alleged that the compromise settlement

of the claim was based upon a bona fide dispute, which arose out of an ambiguity in the contract.

By order of the court, Gordon Norman Johnston was joined as a party defendant. His answer alleged, *inter alia,* that the extra services claimed were performed, and compensation therefor was earned, due, and unpaid; that payment for such extra services was provided for under article No. 7 of the contract, and that the compromise settlement was effected "under the threat of litigation and upon the advice of the said Prosecutor's Office," and was based upon a valid consideration. The affirmative matters pleaded were denied by the plaintiff.

The cause was tried to the court, which entered judgment in favor of the defendants. From a judgment of dismissal, the plaintiff has appealed.

The appellant assigns error to the court's finding of fact that a dispute existed, and that the compromise was valid, and to its conclusions of law and judgment based thereon.

Appellant contends that the claim lacked consideration, for the reason that the architect (as shown by the itemized claim) performed no service for the district, other than that required of him by article No. 16 of the contract, and that the claim, therefore, had no validity either in fact or in law.

In the instant proceeding, we are not *primarily* concerned with whether or not the claim was one which would stand the test of its validity in court. The primary issue here is the validity of the compromise agreement. The facts are not in dispute, and are substantially as set out heretofore. The rules of law relating to compromise settlements are well established, and, in so far as they are applicable to the instant proceeding, are as follows:

The law favors compromise settlements. *Buob v. Feenaughty Machinery Co.,* 4 Wn. (2d) 276, 294, 103 P. (2d) 325 (1940). A municipal corporation has inherent power to enter into a compromise settlement of disputed claims, arising out of a subject matter concerning which the municipality has the general power to contract. *Abrams v. Seattle,* 173 Wash. 495, 502, 23 P. (2d) 869 (1933). See, also,

*Christie v. Port of Olympia,* 27 Wn. (2d) 534, 179 P. (2d) 294 (1947).

 In the absence of a showing of fraud or manifest abuse of discretion, the elements which govern the power and authority of a municipal corporation to exercise its discretion and compromise a claim are as follows:

(1) The claim must arise out of a subject matter upon which the municipality has general power to contract.

(2) There must be a bona fide dispute as to the municipality's liability, either in fact or in law.

(3) The settlement must be effected by the exercise of good faith.

Do the facts establish (as the trial court found) that a bona fide dispute existed at the time the parties compromised and settled the claim?

 We believe that the record supports the court's finding. After the "definite scheme for the building" had been approved by the board the board made substantial physical changes in the plans and specifications, which resulted in a contract. Whether the changes, as made by the board after the original "scheme" was approved, came within the purview of article No. 7 (for which the architect was to be paid) or article No. 16 (which required no additional payment) gave rise to a dispute as to the proper interpretation to be placed upon the contract. The basis of the dispute was not groundless or frivolous. It was a dispute which could be conclusively determined only after it had stood the test of a court action.

The board, in the proper exercise of its discretion and acting in a manner it believed to be in the best interest of the district, concluded that the claim should be compromised, rather than risk additional cost and expense to the district in litigating its validity. There is no contention here that, in this regard, the board did not act in good faith.

 Since the board's compromise settlement of the claim was valid, it is immaterial whether or not, in a proper legal proceeding, it might subsequently be established that

the claim was illegal. As we said in *Abrams v. Seattle, supra* [p. 502]:

" . . . a municipality has the power to compromise claims. *Franklin County v. Carstens,* 68 Wash. 176, 122 Pac. 999. The power to settle does not depend on the possible ultimate decision for or against the validity of the asserted claim. 44 C. J. 1449."

See, also, *Opitz v. Hayden,* 17 Wn. (2d) 347, 369 *et seq.,* 135 P. (2d) 819 (1943); *Jones v. Reese,* 191 Wash. 16, 70 P. (2d) 811 (1937); *Franklin County v. Carstens,* 68 Wash. 176, 122 Pac. 999 (1912); *Hutchinson v. Mt. Vernon Water & Power Co.,* 49 Wash. 469, 95 Pac. 1023 (1908).

Finally, appellant contends that the amount to be paid for such extra service was not determined prior to the rendition thereof, as provided by article No. 7, and that, hence, the claim was invalid and the board was without authority to pay it.

The performance of this condition did not relate to the substance of the service performed, but to the procedure by which payment therefor would be determined, prior to its rendition. Here, the board, in order to meet a certain construction time limit, ordered the extra service performed, and the architect promptly performed the service satisfactorily. There is nothing in the contract which indicates that the service would be gratuitously performed, if the amount of the fee was not agreed upon before the rendition thereof. On the contrary, the contract is subject to the inference or interpretation that, in the absence of an agreement fixing the amount, the architect would be paid upon some equitable basis for the service actually performed. The procedural provision was for the protection of the district, and was one which the board, in the exercise of its discretion, could properly waive. One who asserts abuse of discretion has the burden of proof to establish that the exercise of the questioned discretion has been abused.

From our examination of the record, we conclude that the appellant has not sustained the burden of proof in this regard.

The judgment is affirmed.

DONWORTH, ROSELLINI, and HUNTER, JJ., concur.

MALLERY, J. (concurring)—I think the appellant has no capacity to maintain the action. I concur in the result of the majority opinion.

FOSTER, J. (dissenting)—I dissent from the court's decision for the following reasons:

Appellant, individually and as secretary of the Pierce County Taxation Bureau, brought suit against the school district to enjoin the payment of an alleged compromise of additional compensation for architectural services, in which action the architect intervened. From a judgment of dismissal, plaintiff Warburton appeals and claims there was no consideration to uphold the agreement of compromise and settlement.

By written contract, respondent Johnston, the architect, agreed to plan the construction of an addition to an elementary school, total cost of which could not exceed the amount available for that purpose, $212,102.45. The lowest bid under Johnston's plans exceeded the available funds by almost $100,000, for which reason the board directed Johnston to draw plans for a building which could be built with the available funds. This the contract required him to do, and, when the plans were revised, a contract was executed for the construction of the addition at a total cost of $239,223.39. Respondent has been paid as provided in the contract, six per cent of the bid figure.

Respondent claimed additional compensation for "extra services" in revising his original plans. Counsel for the school district advised by written opinion that the district was in no way obligated to pay the architect for the revision. The architect's attorney argued to the contrary, and, eventually, the prosecuting attorney of Pierce county prepared a compromise and settlement agreement which was executed by the school district and the architect. Thereafter, by written opinion, the prosecuting attorney advised that the architect's claim was valid.

Because appellant did not in words challenge the compromise or the lack of good faith, respondent argues that there is consideration. While it is true that the good faith compromise of a bona fide dispute is sufficient consideration, good faith alone is not. The dispute must be bona fide or the claim at least doubtful. Forbearance to prosecute a groundless claim cannot constitute consideration for a compromise. There must have been some reasonable ground for the controversy and at least a possibility of recovery. *Nicholson v. Neary,* 77 Wash. 294, 137 Pac. 492; *Sanford v. Royal Ins. Co.,* 11 Wash. 653, 40 Pac. 609.

It was held in *Gainsburg v. Garbarsky,* 157 Wash. 537, 289 Pac. 1000, that:

" . . . While it is true that forbearance to prosecute a valid claim may form the consideration for a promise, yet, . . . ' . . . the forbearance must pertain to a claim upon which recovery might certainly be had or where recovery is at least doubtful.' "

Accord, *Johnson v. S. L. Savidge, Inc.,* 43 Wn. (2d) 273, 260 P. (2d) 1088; *Jones v. Reese,* 191 Wash. 16, 70 P. (2d) 811.

The same principle is stated in 8 Halsbury's Laws of England (3rd ed.) 120, § 209:

"Forbearance to sue . . . is valuable consideration for a promise, provided that the promisee has *reasonable* ground for believing that he has a good cause of action. If, however, it does not appear that there was any right which could be enforced either at law or in equity, a mere forbearance to sue does not of itself constitute a valuable consideration." (Italics mine.)

It is widely recognized that good faith alone is not good consideration if the claim is groundless. Respondent's claim for additional compensation is for doing that which he was already bound to do. Moreover, he was paid the agreed compensation therefor. The claim is utterly groundless, baseless, and unfounded. No one need buy off such a spurious action. The compromise of such a claim is without consideration. *Murphy v. Henry,* 311 Ky. 799, 225 S. W. (2d) 662; *Lauderdale County Cooperative v. Lansdell,* 263 Ala. 557, 83 So. (2d) 201; *Nybladh v. Peoples State Bank of War-*

*ren,* 247 Minn. 88, 76 N. W. (2d) 492; *Hulen v. Truitt,* 188 Okla. 296, 108 P. (2d) 170; *Davis v. Lilly,* 96 W. Va. 144, 122 S. E. 444; *State ex rel. Williams v. Pratt,* 148 Kan. 885, 85 P. (2d) 10; *Pederson v. Portland,* 144 Ore. 437, 24 P. (2d) 1031; 25 Minn. L. Rev. 795; 46 W. Va. L. Q. 342; Annotation, 20 A. L. R. 1326; 1 Corbin on Contracts 433, 436, § 140; 12 Cal. Jur. (2d) 231, § 35; 17 C. J. S. 461, § 104(b).

The law favors voluntary settlements of controversies, *Opitz v. Hayden,* 17 Wn. (2d) 347, 135 P. (2d) 819; and such compromises will be sustained even though subsequent litigation may show that the rights of the parties were different from what they had supposed. *Opitz v. Hayden, supra; Jones v. Reese, supra; Hutchinson v. Mt. Vernon Water & Power Co.,* 49 Wash. 469, 95 Pac. 1023. Therefore, a court will not ordinarily inquire into the dispute upon which the compromise is based except to see that there was some reasonable basis therefor. The court will stop at that point, but the architect's claim must be examined, for the fact that settlements are favored does not dispense with the necessity of consideration. *Warner v. Warner,* 124 Conn. 625, 1 A. (2d) 911, 118 A. L. R. 1348.

The contract is clear and without ambiguity. The compensation is fixed. Extra services entail extra compensation, but the contract defines extra services as acts beyond those called for in the contract.

Conforming the plans to the cost limit set forth ($212,-102.45) was required by the contract. That is explicitly and indisputably set out in Article XVI of the contract.[2] The architect's original plans did not, and such was the sole pur-

---

[2]"It is hereby understood that the Owner has available for the construction or modification of said building, including incidental site development, the sum of $180,000.00, and it is agreed by the Architect and the Owner that in the event the estimate of costs and/or bids for construction of said building or modification shall exceed such sum or shall exceed the maximum per square foot cost allowable for the designed type of building by the State Department of Education, the Architect shall revise such plans and specifications, with the approval of the Owner, until the estimated cost and/or minimum responsible bidder's bid will come within such sums." Article XVI.

pose for the revision. Such is the architect's claim for "extra services" under Article VII of the contract.[3]

If there were a reasonable dispute as to whether the revision constituted extra services or was merely the performance of the architect's prior obligation under the original contract, then the compromise agreement should be sustained.

The question is whether such a dispute is reasonable or not. The contract is abundantly clear that the architect's plans must be within the cost limit. They were not.

The revision of the plans had no other purpose. The school district requested only that the architect perform his contractual obligation. The revision could not be looked upon as extra services outside the contract.

This court has held in a number of cases that the failure of an architect to come within the cost limit set out in his contract of employment was nonperformance on his part, and he could not enforce compensation either under the contract or on a *quantum meruit* theory for the value of services rendered. *Graham v. Bell-Irving,* 46 Wash. 607, 91 Pac. 8; *Svarz v. Dunlap,* 134 Wash. 555, 235 Pac. 801. Accord, *Rowell v. Crow,* 93 Cal. App. (2d) 500, 209 P. (2d) 149; *Parrish v. Tahtaras,* 7 Utah (2d) 87, 318 P. (2d) 642; *Zannoth v. Booth Radio Stations,* 333 Mich. 233, 52 N. W. (2d) 678; Annotation, 127 A. L. R. 410; 6 C. J. S. 307, 310, § 14.

If there were any question that the revision to conform to the contract terms was an extra service, or that the per-

---

[3]"If, after a definite scheme for the building has been approved, the Owner makes a decision which, for its proper execution, involves extra services and expenses for changes in or additions to the drawings, specifications and other documents, or if the Architect is put to labor and expense by delays caused by the Owner or Contractors, or by the delinquency or insolvency of the Contractor, or as a result of damages to the building by fire, he shall be equitably paid for such extra services and expense, the amount of which shall be determined prior to the rendition thereof.

"Should the execution of any work designated or specified by the Architect, or any part of such work, be abandoned or suspended, the Architect is to be paid in accordance with or in proportion to the terms of Article VIII for the services rendered on account of it, up to the time of such abandonment or suspension." Article VII.

formance of an already existing obligation was an extra service, the compromise agreement would be valid. But there is and can be no such question.

It is settled law that performance of an existing obligation constitutes no consideration for a promise or compensation over and above the original agreement. *Snyder v. Roberts,* 45 Wn. (2d) 865, 278 P. (2d) 348, 52 A. L. R. (2d) 631; *Harris v. Morgensen,* 31 Wn. (2d) 228, 196 P. (2d) 317; *Keane v. Fidelity Sav. & Loan Ass'n,* 173 Wash. 199, 22 P. (2d) 59. There is no doubt that this same principle applies to building and construction contracts. *Queen City Constr. Co. v. Seattle,* 3 Wn. (2d) 6, 99 P. (2d) 407.

Any claim based upon such a performance is completely groundless. It could not, in any sense, be called "doubtful," and a compromise agreement to settle such a claim is unenforceable. Forbearance to prosecute a groundless claim does not constitute consideration for a compromise and settlement.

The architect claims that conditions arose, as a result of a steel strike, which made performance of his contractual obligation more difficult than was originally contemplated, and that his performance of the obligation upholds a new consideration.

Such is an erroneous view of the law, for this court in *Maryland Cas. Co. v. Seattle,* 9 Wn. (2d) 666, 116 P. (2d) 280, quoted with approval from an opinion by Mr. Justice Brandeis in *United States v. Spearin,* 248 U. S. 132, 63 L. Ed. 166, 39 S. Ct. 59:

" . . . Where one agrees to do, for a fixed sum, a thing possible to be performed, he will not be excused *or become entitled to additional compensation,* because unforeseen difficulties are encountered." (Italics mine.)

The same principle was followed in *Westland Constr. Co. v. Chris Berg, Inc.,* 35 Wn. (2d) 824, 215 P. (2d) 683; *Harms, Inc. v. Meade,* 186 Wash. 287, 57 P. (2d) 1052; *White v. Mitchell,* 123 Wash. 630, 213 Pac. 10; *Brown v. Ehlinger,* 90 Wash. 585, 156 Pac. 544. See, also, *Clas v. State,* 196 Wis. 430, 220 N. W. 185; 2 Restatement, Contracts, 882, § 467.

Because there was no consideration for it, the attempted

compromise was invalid. The school district is not authorized to give away public funds. No public official is. The controlling rule of law was laid down in *Farnsworth v. Town of Wilbur,* 49 Wash. 416, 95 Pac. 642. We there held:

" . . . It is true the council has the exclusive management of the fiscal affairs of the town, and must be accorded a somewhat wide discretion as to the manner in which it will conduct such affairs, yet we think this power does not enable them to give up to third persons the actual property of the town. No doubt the town council may legally compromise doubtful or disputed claims where they act in good faith and with ordinary discretion, but they cannot under the guise of a compromise surrender up valuable rights or claims over which there is no longer room for a substantial controversy. Such an attempt is a gift rather than a settlement of a doubtful or disputed claim, and gifts to private individuals are beyond the powers of the town."

The same conclusion was stated recently (1958) in *Edelstein v. City of Asbury Park,* 51 N. J. Super. 368, 143 A. (2d) 860, in the following words:

" . . . We also recognize the fundamental principle that a municipal corporation may, generally speaking, deal with its contracts and adjust and settle claims against it in the same manner as a natural person, provided it acts lawfully and in good faith, but it cannot make a gift of public monies nor grant releases from obligations under the guise of compromising an entirely unfounded claim against it. . . ."

I would reverse the judgment and enjoin the gift of public funds.

WEAVER, C. J., HILL, and FINLEY, JJ., concur with FOSTER, J.

---

May 4, 1960. Petition for rehearing denied.