UNION COUNTY BOARD OF CHOSEN FREEHOLDERS, A BODY POLITIC OF THE STATE OF NEW JERSEY, PLAINTIFF, v. THE UNION COUNTY PARK COMMISSION, A BODY POLITIC OF THE COUNTY OF UNION, DEFENDANT.

Superior Court of New Jersey
Law Division

Decided December 7, 1962.

*Mr. Leo Kaplowitz,* County Attorney, for plaintiff (*Mr. H. Lee Sarokin* on the brief).

*Mr. Frederick C. Kentz, Jr.,* for defendant (*Messrs. Kentz, Kentz and Gilson,* attorneys).

FELLER, J. S. C. This is an action for a declaratory judgment wherein the Union County Board of Chosen Freeholders (hereinafter called board of freeholders) seeks to determine its right to $150,000 held by the Union County Park Commission (hereinafter called park commission) as a result of the sale of park lands held by the park commission. Plaintiff now moves for summary judgment.

A review of the pleadings and the oral arguments indicates that the plaintiff and defendant are in agreement as to the following facts: In February 1962 the park commission sold certain lands held by it to the Board of Education of the Borough of Roselle Park for $150,000. These lands were originally acquired by the park commission at various times with funds requisitioned from the board of freeholders pursuant to *R. S.* 40:37–129. The total amount paid by the park commission for the original acquisition of these lands was $35,719. The board of freeholders, in turn, acquired the money through the sale of bonds of the County of Union. The park commission has retained the said sum of $150,000 and proposes to apply these funds for the purchase of additional park lands. Thus there is no genuine issue of fact involved.

It is the contention of the board of freeholders that the proceeds from the sale may be used to purchase other park lands only with the approval of the board or should be turned over to it for the purpose of reducing the existing bonded indebtedness of the county. The park commission contends that it has the right to retain the proceeds for the purposes of acquiring additional park property in the future.

Among the defenses raised by the park commission to this action are: (1) there is no justiciable controversy; (2) plaintiff has failed to state a cause of action; (3) plaintiff is not a proper party to bring this action; and (4) there is a genuine issue of fact which warrants a denial of a motion for a summary judgment. However, with reference to (4) this court has determined *supra* that there is no genuine issue of fact.

## I.

■ The question is whether the Union County Board of Freeholders has an interest sufficient to support this action for a declaratory judgment. The Uniform Declaratory Judgments Act is designed "to settle and afford relief from uncertainty and insecurity with respect to rights, status and other legal relations." *N. J. S.* 2A:16–51. A person (including a public corporation) "whose rights, status or other legal relations are affected by a statute * * * may have determined any question of construction or validity arising under the * * * statute * * * and obtain a declaration of rights, status or other legal relations thereunder." *N. J. S.* 2A:16–53. This enumeration, *N. J. S.* 2A:16–53 provides, does not exhaust the broad authority in the act "to declare rights, status and other legal relations." In essence, the plaintiff must have an interest in the subject matter in order to maintain a declaratory judgment action. *Bergen County v. Port of New York Authority,* 32 *N. J.* 303, 307 (1960).

■ It is conceded that a plaintiff must have an interest in the subject matter in order to maintain an action for a declaratory judgment, *Bergen County v. Port of New York Authority, supra,* and that a justiciable controversy between adverse parties must exist, *Trustees of Rutgers College in N. J. v. Richman,* 41 *N. J. Super.* 259 (*Ch. Div.* 1956). If these elements exist, then the plaintiff has stated a cause of action. *Rosenberg v. D. Kaltman & Co.,* 28 *N. J. Super.* 459, 463 (*Ch. Div.* 1953).

 Under the statutes of New Jersey a board of free-holders of a county is vested with the power to manage, control and .govern the property, finances and affairs of its county, except where by law any such powers or duties are imposed upon or vested in another board, committee or department of the county. *R. S.* 40:20–1. It is the contention of the park commission. that a portion of these powers has been vested "in another board, committee or department," and pursuant to *R. S.* 40:37–96 to 40:37–174 the power to retain the proceeds of the sale of the lands in question has been vested in it. The board of freeholders is entitled to challenge the asserted authority of the park commission, its agent, *Parks v. Union County Park Commission,* 7 *N. J. Super.* 5 (*App. Div.* 1950), since such power, if it arises through the statutes governing the park commission, could not only upset the financial structure of the county but would also divest the board of freeholders of a portion of its express powers conferred by statute to manage, control and govern the finances of the county. These factors establish the requisite interest on the part of the plaintiff.

 The relationship of the plaintiff and defendant here, as well as the assertion by the park commission of rights which may interfere with the powers of the board of free-holders, distinguishes this case from *Bergen County v. Port of New York Authority, supra,* which is relied upon by the defendant to deny plaintiff's requisite interest. In the *Bergen County* case, the Port of New York Authority was neither the agent of Bergen County nor were the rights of the county being allegedly interfered with. Not only is the interest of the board of freeholders existent here but there has been a definite assertion of legal rights on the one side and a positive denial thereof on the other as to rights arising out of *R. S.* 40:20–1 and *R. S.* 40:37–96 *et seq.* This presents a "justiciable controversy" between adverse parties, justifying mainte-nance of an action for a declaratory judgment. The declaratory judgment remedy should not be denied lightly, and where the complaint discloses a justiciable controversy within

the statute, normally it ought to be entertained. *Condenser Service & Engineering Co. v. American Mutual Liability Insurance Co.*, 45 *N. J. Super.* 31 (*App. Div.* 1957). The Uniform Declaratory Judgments Act statute being a remedial statute, it should be liberally construed. *Rosenberg v. D. Kaltman Co., supra.* There is no question but that we have an adversary proceeding ripe for determination. *New Jersey Turnpike Authority v. Parsons*, 3 *N. J.* 235, 240 (1949). A declaratory judgment will settle the present controversy and provide a guide for both plaintiff and defendant in the future.

## II.

As stated above, the park commission, upon selling lands held by it, now holds $150,000 and contends that it is entitled to have control over it and to use the same for the purchase of other park lands. *R. S.* 40:20–1 states as follows:

"The property, finances and affairs of every county shall be managed, controlled and governed by a board elected therein, to be known as 'the board of chosen freeholders of the county of . . . . . . . . (specifying name of county', except where by law any such powers or duties are imposed upon or vested in another board, committee or department of the county."

Under this provision, the management, control and government of the finances of the county are imposed upon and vested in the board of freeholders unless by law such powers are imposed upon or vested in another board, committee or department of the county. Therefore, for the park commission to retain the sum of $150,000 and use the same to purchase other park lands, this power must be vested by law in said commission.

It is clear that the control and management of the public parks has been vested in the park commission pursuant to *R. S.* 40:37–96 *et seq.* It is also clear that this control and management of the parks is for the benefit of the county. *Essex County Park Commission v. West Orange*, 75 *N. J. L.* 376 (*Sup. Ct.* 1907), reversed on other grounds 77 *N. J. L.*

575 (*E. & A.* 1908). All of the members of the Union County Park Commission are reputable and outstanding members of the community, and if they are entitled to retain control of the above sum it is their intention to use this for the purchase of other park lands. This sum would thus be expended for a laudable and public purpose. However, the question is: Do the above statutes contain any provisions vesting this power and authority in the park commission? If the management and control of the proceeds from the sale of these park lands exists in the park commission, such power must be found within the provisions of *R. S.* 40:37–96 to 40:37–174, since these statutes govern the Union County Park Commission. *Union County Park Commission v. Board of Chosen Freeholders*, 3 *N. J.* 73 (1949). An examination of these statutes reveals that there is no such provision.

It must be noted that under the provisions of *N. J. Constitution of* 1947, *Art.* IV, *Sec.* VII, *Par.* 11, any law concerning municipal corporations formed for local government or concerning counties shall be liberally construed in their favor. Thus *R. S.* 40:20–1 should be liberally construed in favor of the Board of Freeholders, the governing body of the county. *Henninger v. Board of Chosen Freeholders of Bergen County*, 3 *N. J.* 68 (1949); *Essex County v. Hindenlang*, 35 *N. J. Super.* 479 (*App. Div.* 1955), appeal dismissed 24 *N. J.* 517 (1957). However, the Union County Park Commission is not entitled to the benefit of a liberal construction of *R. S.* 40:37–96 to 40:37–174. Although it is a body both corporate and politic (*R. S.* 40:37–99), it is an agency of the County of Union, *Parks v. Union County Park Commission, supra*, and it is also considered to be an administrative agency, *Cammarata v. Essex County Park Commission*, 26 *N. J.* 404 (1958). Thus, it does not have the status of the governing body, namely, the board of freeholders. Authority delegated to an administrative agency should be construed so as to permit the fullest accomplishment of the legislative intent. However, the grant of an express power by statute is always attended by the incidental authority fairly

and reasonably necessary and appropriate to make it effective, and the purpose of the statute is not to be frustrated by an *unduly* narrow interpretation. *Cammarata v. Essex County Park Commission, supra.* On the other hand, the statutory power of an administrative agency should be strictly construed especially in reference to the language of legislation granting to administrative agencies the power to expend public funds. A doubtful power does not exist, and any doubt or ambiguity is to be resolved against the administrative agency.

 In *Driscoll v. Burlington-Bristol Bridge Co.*, 8 *N. J.* 433 (1952), the court, in considering the power of another body corporate and politic, namely, the Burlington County Bridge Commission, stated as follows:

"A bridge commission is a body both corporate and politic. Its creation by the board of chosen freeholders of a county is authorized by the *'Self-Liquidating Bridges Act,' R. S.* 27:19–26 *et seq.*, as amended, *N. J. S. A.* In many respects it has a standing analogous to that of a municipal corporation and derives its power and authority to act solely from statute. * * *. Like a municipal corporation it enjoys a considerable degree of discretion as to the manner in which it carries out the functions committed to it, but unlike 'municipal corporations formed for local government' which by *art.* IV, *sec.* VII, *par.* 11 of the *Constitution* of 1947 are entitled to have statutes concerning them 'liberally construed in their favor,' *the statutory powers of a bridge commission are to be strictly construed and any doubt or ambiguity is to be resolved against it.*" (at *p.* 490; emphasis added)

Similarly, the Union County Park Commission is a body both corporate and politic, and it enjoys a considerable degree of discretion as to the manner in which it carries out the functions committed to it. However, since it is an agency of the county as well as an administrative agency, the statutory powers of the commission should be strictly construed and any doubt or ambiguity in said statutes should be resolved against it.

In the case of *Mason County v. Civic Research Council,* 343 *Mich.* 313, 72 *N. W.* 2*d* 292 (1955), the court held that:

"An express grant of power to administrative officers, boards or commissions is subject to a strict construction. The power and

authority to be exercised by administrative boards or commissions must be conferred by clear and unmistakable language, *and a doubtful power does not exist.* The extent of the authority of the people's public agents is measured by the statute from which they derive their authority." (Emphasis added.)

The Court in *Mason* held that the county board of supervisors, having previously established a county infirmary at a definite location in the county, had no power under the statutes to change the site of the infirmary to another city in the county, particularly where the suitability of the existing site was not questioned and the resolution approved by the electors authorizing the bond issue to construct and equip a new infirmary made no provision for a change in the location thereof.

The general rule applied to statutes granting powers to administrative boards, agencies or tribunals is that only those powers are granted which are expressly or by necessary implication conferred, and the effect usually has been to accomplish a rather strict interpretation against the exercise of the power claimed by the administrative body; and in like manner the language of legislation granting to administrative agencies the power to expend public funds has been strictly construed. 3 *Sutherland, Statutory Construction* (3d ed.), sec. 6603, pp. 268 et seq.

In *Woodruff v. Beeland,* 220 Ala. 652, 127 So. 235, 236 (1930), the court held that an administrative board, such as a county board of education or other agency, the creature of legislation, has only the powers conferred by its creator. Every such board charged with the duty of devoting public funds to ends prescribed by law must point to a "thus saith the law" for every disbursement. Unless a given charge on such fund is expressly or impliedly authorized, it cannot be lawfully incurred. See also *Clas v. State,* 196 Wis. 430, 220 N. W. 185 (1928) ; *Village of Carthage v. Colligan,* 158 App. Div. 793, 144 N. Y. S. 468 (1913).

Therefore, under the authorities cited above, statutes which impose and vest powers and duties upon an administrative body or agency, particularly those statutes which grant the

power to expend public funds, should be strictly construed. As already stated, a doubtful power does not exist, and any doubt or ambiguity in said statutes is to be resolved against it.

An examination of *R. S.* 40:37–96 *et seq.* discloses that the park commission has been granted various powers which pertain to the control, maintenance and management of the park lands. Among these powers is the power to acquire land by purchase, gift, devise or eminent domain, and to establish public parks with it, *R. S.* 40:37–101; the power to construct roads, paths and sidewalks and to plant trees and shrubbery, *R. S.* 40:37–106, 107, 108 and *N. J. S. A.* 40:37–109; the power of condemnation and the authority to assess landowners for benefits received by improvements, *N. J. S. A.* 40:37–109 through 40:37–128; the power to request and receive from the board of freeholders an appropriation of funds for the maintenance of the parks, *N. J. S. A.* 40:37–101.1, as well as the power to requisition money from the board of freeholders who, in turn, may issue bonds of the county for this money, *R. S.* 40:37–129. The park commission is also given the power to sell or exchange lands held by it, *R. S.* 40:37–142, 146 and *N. J. S. A.* 40:37–146.1. Thus, an examination of these and the remaining statutes pertaining to the Union County Park Commission fails to disclose any provision from which it can reasonably be inferred that the said park commission may retain the proceeds of the sale of park land and use these proceeds for the purchase of other lands without the approval of the governing body of the county. Rather, from the fact that the powers of the park commission are spelled out in some detail without mention of the right to retain said proceeds for the purchase of other park lands, it is indicated that it clearly was not the legislative intent to give the park commission that power. Nowhere in these statutes can there be found the right or power to retain for future use or any other use the proceeds from the sale of any capital asset.

The only hint of such a power is found in *R. S.* 40:37–129, which is as follows:

"To meet the expenses incurred under the provisions of sections 40:37–96 to 40:37–174 of this title in addition to the sum of money received from benefit assessments as herein provided *and otherwise*, the board of chosen freeholders of the county shall from time to time, on the requisition of the park commission, borrow money in the name and on the credit of the county \* \* \*." (Emphasis added.)

Do the sources of moneys included in the indefinite words of "and otherwise" of the above statute include the proceeds from the sale of capital assets such as lands? It must be conceded that to construe the statute in this manner would be to vest the control of an indefinite amount of cash in the park commission through the liquidation of its assets. Yet, the "and otherwise" must include some sources of income other than proceeds from the sale of assets. These sources, from an examination of the statutes, include (1) annual appropriations from the board of freeholders, *N. J. S. A.* 40:37–101.1 *et seq.;* (2) penalties assessed pursuant to *R. S.* 40:37–134 and 152; (3) charges for admission to or use of recreational facilities, *N. J. S. A.* 40:37–147.1; (4) fines levied against witnesses for failure to appear in court, *N. J. S. A.* 40:37–156; and (5) funds obtained by subscription for the park police pension fund, *N. J. S. A.* 40:37–159.

It is evident that these other sources of money may be meager in comparison to the cost of land. However, this leads to the conclusion that the Legislature intended that the moneys necessary for the purchase of lands above that obtained from these sources, if any, should come solely from the board of freeholders. This construction, which limits the words "and otherwise" to those other sources specified in the statute and does not include the proceeds from the sale of capital assets, is in accord with the general grant of power vested in the county pursuant to *R. S.* 40:20–1, *supra,* and does not result in an impairing of such powers by inference.

An argument against such county control is urged by the park commission through *Union County Park Commission v. Board of Chosen Freeholders, supra,* 3 *N. J.* 73 (1949), wherein, the court stated:

> "Nor does the legislative scheme in anywise impinge upon the highly desirable autonomy of the Park Commission in the exercise of its statutory functions once funds are appropriated to it. *The Park Commission, and the Park Commission alone, is empowered to decide how its funds shall be best expended.*" (at *p.* 80; emphasis added)

However, the facts in that case differ from the facts in this case. The park commission intends to expend funds which have not been appropriated to it by the governing body. The board of freeholders did not appropriate to the park commission the sum of $150,000 in the 1962 budget. Over a period of years the board of freeholders appropriated the sum of $35,719 for the purchase of the land which was sold for $150,000, and under the terms of *N. J. S.* 40A:4–57, except for emergency appropriations, no body, board or commission shall during any fiscal year expend any money (except to pay notes, bonds or interest) for any purpose for which no appropriation is provided in the budget. This is not a capital project to be financed in the future in whole or in part by the issuance of notes or bonds.

An examination of the legislative scheme for providing capital funds for parks reveals that it was the uniform design of the Legislature to place the ultimate control of such appropriations to the park commission in the electorate, either directly through the device of a referendum or indirectly through its elected representatives, the members of the board of chosen freeholders. The members of the park commission were originally appointed by the justice of the former Supreme Court presiding in the county (*N. J. S. A.* 40:37–97, 98) for terms of five years. Later they were appointed by the Chief Justice of the Supreme Court (*N. J. Constitution of 1947, Art.* XI, *Sec.* IV, *par.* 10, *L.* 1948, *c.* 375, *N. J. S. A.* 1:1–22), and until recently were appointed by the assignment judge of the county (*N. J. S. A.* 40:37–97, 98, as amended *L.* 1953, *c.* 37). Under the terms of an amendment to the statute enacted in 1962, *L.* 1962, *c.* 116, however, they are now appointed by the board of chosen freeholders of the county (*N. J. S. A.* 40:37–97, 98 as amended). Thus, they do not

hold office through any mandate of the people of the county, nor are they directly responsible to them. That the park commission has established and is maintaining one of the finest, and *per capita,* largest county park systems within the State, and in so doing has made judicious and efficient use of the funds that have been granted to it, does not alter the desirability of the legislative policy of committing the power to authorize the expenditure of funds either to the people themselves through the device of a referendum or to the duly elected officers of the county who are periodically called upon to justify their stewardship. The latter is a traditional concept in this country, at national, state and local levels. See *Union County Park Commission v. Board of Chosen Freeholders, supra.*

It has also been argued that since *N. J. S. A.* 40:37–146.1, as amended, provides that the park commission may sell land to the county, it would be an absurd construction to allow the consideration paid by the county to remain in the control of the county as well as the land it purchased. Although this argument has merit, the statute does not specify what is to be done with the proceeds of such a sale at all. This statute originally provided for the sale of park lands by the county park commission at private sale to the State of New Jersey, to the municipality in which such real estate was situated, or to any public board, authority or agency of said municipality. The statute did not provide for the ultimate disposition of the proceeds of any sale. In 1961 the statute was amended to contain the additional provision to provide for the sale of park lands to the county in which said lands are situated. Thus, the statute, as amended, does not give the park commission the right to retain the proceeds and purchase other park lands with the same. Apparently it was the intention of the Legislature, in passing the amendment, not to give any other power to the park commission except the power to sell park lands to the county in addition to the authority to sell lands to the State and municipalities, etc.

■ Another argument advanced by the defendant is to the effect that *N. J. S. A.* 40:37–201.1 provides that all proceeds from the operation of the facilities of the parks or the commission are to be used by the commission for the development and management of its parks. However, this does not apply to the proceeds received from the sale of park lands, nor does this statute (*N. J. S. A.* 40:37–201.1) apply to the Union County Park Commission. It applies only to those counties which have a population of between 175,000 to 200,000 inhabitants, after the said statute has been adopted in said counties by referendum. *R. S.* 40:37–195.

In the defendant's brief it is stated that the Legislature has not given the park commission the power of discretion as to the assets of park land. The defendant then states as follows:

"*N. J. S. A.* 40:37–133 provides that 'all real estate taken or held under sections of this title for purposes of public parks shall be forever kept open and maintained as such' * * *."

The defendant then concludes that the park commission is entitled to retain the proceeds from the sale of park land and use the same to purchase other park lands, and thus enable the commission to carry out the mandate of the statute that the real estate so acquired "shall be forever kept open and maintained as such." This interpretation is not justified in view of the remaining part of the above statute which was not set out in the defendant's brief. It provides as follows:

"* * * and no steam or other railroad shall be laid out on, or maintained or operated in or on any portion of the parks, open spaces, boulevards, parkways or roadways laid out and located under said sections 40:37–96 to 40:37–174, except at such places and in such manner as the commission shall in writing approve."

Thus a reading of the entire statute leads to the conclusion that *R. S.* 40:37–133 provides that park land shall be used only for park purposes rather than making available any part of said lands to be used by the railroads unless approved in writing by the commission.

Furthermore, *N. J. S. A.* 40:37–146.1, *supra,* which gives the park commission the power to sell lands, states as follows:

"* * * provided the members of the park commission shall by resolution approve such sale as in public interest, *and shall certify such resolution to the board of chosen freeholders."* (Emphasis added.)

If the commission had the authority to retain the proceeds of any sale and use the same—in its discretion—to purchase other park lands, the notification to the board of freeholders would be of no significance. The plaintiff contends, however, that the required notice is a prerequisite requiring action by the board with reference to the use of the funds derived from such sale. This court agrees with this contention.

It is agreed that the proceeds have to go somewhere, but since the Legislature has not expressly provided that they can be retained by the park commission, to supply this power by inference would be an assumption of those powers held by the county under *R. S.* 40:20–1. If the power to retain the proceeds from the sale of lands held by the park commission is to exist, it must do so by legislative act. This court cannot, by statutory construction or inference, delete those powers held by the county, an agency of the State. *Godfrey v. McGann,* 37 *N. J.* 28, 34 (1962). See also *Stroebel Steel & Construction Co. v. State Highway Commission,* 120 *N. J. L.* 298 (*E. & A.* 1938). Since the park commission has not been expressly granted the power to retain these proceeds or control them, this power is still within the board of freeholders under the liberal construction that must be placed on *R. S.* 40:20–1. See *N. J. Constitution of* 1947, *Art.* IV, *Sec.* VII, *par.* 11, *supra.*

The Union County Park Commission does not have the power or the authority under any statute to retain for future use the proceeds from the sale of any capital asset. In the absence of any such statute, the management and control of the same should reside in the governing body. The Union County Board of Freeholders is the legislature of the county;

*DeFeo v. Smith*, 31 *N. J. Super.* 474 (*Law Div.* 1954), reversed on other grounds 17 *N. J.* 183 (1955), and manages and controls the finances of the county. *R. S.* 40:20–1, *supra*.

Therefore, the said sum of $150,000 shall be transferred to the Treasurer of the County of Union in order that the same may be applied—in the discretion of the board of freeholders —to reduce the bonded indebtedness of the county or to be utilized to meet current capital governmental requirements, including those of the Union County Park Commission or for any other purpose authorized by law.

For the foregoing reasons, counsel for the plaintiff will present an appropriate judgment.