107 N.J. Super. 495 (1969)
259 A.2d 466
GEORGE THEODORE JAMAR, JR., AN INFANT BY HIS GUARDIAN AD LITEM, GEORGE THEODORE JAMAR, SR., AND GEORGE THEODORE JAMAR, SR., INDIVIDUALLY, PLAINTIFFS-APPELLANTS
v.
TYRONE HODGES, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 27, 1969.
Decided November 28, 1969.
*496 Before Judges SULLIVAN, CARTON and HALPERN.
Mr. Leonard S. Sachar argued the cause for appellants (Messrs. Sachar, Sachar & Bernstein, attorneys).
Mr. Lawrence S. Grossman argued the cause for respondent (Messrs. Burton, Quackenboss & Axelrod, attorneys).
The opinion of the Court was delivered by SULLIVAN, P.J.A.D.
This appeal in a pedestrian automobile accident case involving an uninsured driver, raises the question whether a proposed additur to a jury verdict fixing damages requires the consent of the Unsatisfied Claim and Judgment Fund in addition to the consent of the uninsured driver-defendant. The trial court held that it could not enter the additur as a judgment without the Fund's consent. We affirm this ruling.
*497 Plaintiff George Jamar, Jr., then age 19, was struck by an automobile operated by defendant Tyrone Hodges, an uninsured driver. Suit was instituted for the infant's injuries by his father as guardian ad litem, who also sued individually for his son's medical expenses and loss of his son's services. The Fund, having received proper notice of the claim, assigned it to an insurer for investigation and defense. N.J.S.A. 39:6-66. Counsel was retained to represent the defendant. N.J.S.A. 39:6-67.
After a plenary jury trial on the issues of liability and damages, the jury returned a verdict in favor of the infant plaintiff for $3,000. The father was awarded $3,000 on his claim. The infant plaintiff thereupon moved to set aside the jury verdict and for an additur, or, in the alternative, for a new trial as to damages only. The court ordered that if defendant would accept an additur of $2,500 for plaintiff George Jamar, Jr., thereby increasing his total recovery to $5,500, judgment would be entered accordingly. The court also determined that if defendant did not accept the additur, the verdict as to both plaintiffs would be set aside as to damages only and a new trial granted on the issue of damages.
Counsel assigned to represent the uninsured defendant reported to the court that the uninsured defendant elected to accept the additur, but that the Fund was unwilling to agree to it. The trial court ruled that it had no authority to order additur in the case over the objection of the Fund and it therefore ordered a new trial as to both plaintiffs limited to the issue of damages.
Plaintiffs filed a notice of appeal from the aforesaid determination and in due course submitted their brief and appendix on appeal. An answering brief was filed in the name of defendant, but actually supporting the position of the Fund. Prior to oral argument the court called counsel's attention to the fact that this was an attempted appeal from an interlocutory ruling taken without leave of court. Plaintiffs then asked the court to grant leave to appeal nunc pro tunc. Since the matter had been fully briefed and was ready for *498 argument, and since the issue was an important one, this court granted leave and agreed to hear the merits of the appeal.
We are satisfied that under the circumstances here presented the consent of the Fund was a prerequisite to the entry of an additur. Although no order for payment of any judgment out of the Fund has as yet been made, it is not seriously contended that the Fund will not have to pay the amount of any judgment entered in this cause, up to the limits of its liability. It therefore had a sufficient interest in the case, even though not a party thereto as such, to be heard on the question of an additur.
We recognize that defendant in this case, the uninsured driver, did give his consent to the additur. However, such consent cannot be binding on the Fund. Even though defendant will be legally liable for any judgment entered, realistically speaking, the judgment also involves the Fund. The act provides that in any case in which an insurer has assumed the defense of an action, defendant shall cooperate in the defense of such action. N.J.S.A. 39:6-68. It seems fundamental that under these circumstances the Fund should have an equal right to accept or reject the additur. Cf. Fisch v. Manger, 24 N.J. 66 (1957); Moran v. Feitis, 69 N.J. Super. 531 (App. Div. 1961).
It is to be noted that under the act, N.J.S.A. 39:6-72, a settlement of an action against an uninsured motorist requires, inter alia, (1) a confession of judgment by defendant as to the amount agreed upon, (2) approval of the proposed settlement by the trial court, and (3) approval thereof by the manager of the Fund. This is so even though the Fund is not a party to the action.
For the reasons heretofore stated, we hold that the trial court properly determined that it was without authority to order an additur unless the Fund consented to such additur.
Our dissenting colleague holds that the uninsured defendant's consent to the proposed additur should be sufficient to impose the additur unless the Fund shows good cause to *499 the contrary. We cannot agree. Here, a jury fixed the amount of the infant's damages after a plenary trial. The Fund cannot be required to become liable for a larger award without its consent except by retrial. That is the essence of the practice of additur.
In the instant case the proposed additur did not involve the verdict in favor of the father on his per quod claim. However, the court ordered a new trial on the issue of damages as to both plaintiffs, in the event the additur was not accepted. Appellants have not challenged the order for a new trial as to the father's damages except on the ground that the additur should have been entered.
Affirmed.
HALPERN, J.A.D., (dissenting).
I respectfully dissent. The facts set forth in the majority opinion should be supplemented to indicate that defendant was driving plaintiff's car, which he had taken without permission, when he ran him over. Plaintiff sustained serious injuries and was hospitalized for about ten days; part of the time he was confined to the intensive care unit. He suffered body burns resulting in extensive scarring, requiring future plastic surgery at an estimated cost of $1,125. The medical bills incurred and out-of-pocket expenses amounted to about $1,400. The trial judge found, as a matter of law, that plaintiff was not guilty of contributory negligence.
These supplemental facts are recited to show there was ample justification for the additur allowed. In fact, counsel for the Fund recommended its payment. The only reason the trial judge ordered the new trial on damages was his conclusion that he could not impose additur without the Fund's consent.
I disagree with such conclusion. The Fund has the right to be heard and refuse to consent, but such decision must not be made arbitrarily and capriciously, to the detriment of the plaintiff, defendant, and the public whose funds it administers. *500 In this case, so far as the record reveals, no reason whatsoever was given by the Fund for its decision.
The Fund is a public body, whose officers hold positions of public trust. They are required to exercise their statutory duties in good faith, and on fair and intelligent consideration, with loyalty to the public, the courts and litigants. If the Fund's actions are deemed arbitrary, they are subject to judicial scrutiny for reasonableness. See Terminal Enterprises, Inc. v. Jersey City, 54 N.J. 568 (Decided November 5, 1969).
The Legislature's purpose in establishing the Fund and delineating its responsibilities is set forth in Douglas v. Harris, 35 N.J. 270 (1961):
The purpose of the Fund is to provide a measure of relief to persons who sustain losses or injury inflicted by financially irresponsible or unidentified operators of motor vehicles, where such persons would otherwise be remediless. Corrigan v. Gassert, 27 N.J. 227 (1958), Dixon v. Gassert, 26 N.J. 1 (1958). The statute is to be liberally construed to advance the remedy, due regard being had to the protection of the Fund against fraud and abuse and to the fulfillment of the essential legislative policy. Giles v. Gassert, 23 N.J. 22, 34 (1956). The Fund is created for those purposes by charging fees to registrants of uninsured motor vehicles and by levying assessments against liability insurance companies doing business in New Jersey and is regarded as a trust fund for the stated purposes and the cost of administration. Wormack V. Howard, 33 N.J. 139, 143 (1960). The public interest demands that the Fund, although a trust fund for those individuals injured by financially irresponsible or unidentified operators of motor vehicles, be administered in a fashion to assure that only those persons legitimately entitled to participate in its benefits are paid therefrom. This is a duty imposed by public policy and owed to the contributors as well as the general public. See Myers v. Cave, 55 N.J. Super. 185 (App. Div. 1959). [at 279]
A consideration of the Fund Law as a whole reveals a statutory scheme placing the ultimate decision for payment from the Fund, in most instances, upon the judiciary. The courts are the guardians of the trust money held in the Fund. Szczesny v. Vasquez, 71 N.J. Super. 347, 358 (App. Div. 1962). It must hear all applications for the payment of judgments obtained against uninsured drivers. N.J. *501 S.A. 39:6-69. It must be satisfied that the claimant (judgment creditor) has complied with all the conditions entitling him to payment; and the Fund is empowered to appear and be heard as to "why the order should not be made." N.J.S.A. 39:6-70. In dealing with payment of a judgment consented to by a defendant, the statute requires notice to the Fund to afford it an opportunity to be heard, but it permits the court to order payment "in such sum as the court shall determine to be justly due and payable out of the fund, * * *." N.J.S.A. 39:6-74. These statutes spell out a legislative intent requiring the Fund to show some reasonable basis as to why the court should not enter the order to pay the judgment.
A distinction must be drawn between settlements of pending cases requiring Fund approval under N.J.S.A. 39:6-72 and the situation before us. In the instant case there has been an adversary jury trial. Defendant's responsibility for the accident has been established (it was never seriously in dispute). The Fund is willing to pay the judgments totalling $6,000 but not $8,500. The trial judge, with full realization of his responsibilities, made the factual determination that the infant plaintiff's judgment should be raised from $3,000 to $5,500. Defendant agreed such was fair and consented to the additur. Such consent, under these circumstances, should be sufficient to impose the additur unless the Fund shows good cause to the contrary.
It is more probable than not that on a retrial limited to damages the verdicts will exceed $10,000 (the Fund's limit of responsibility). The excess over $10,000 theoretically will have to be paid by defendant, and his interests should be considered in view of all the circumstances. Why should the Fund be entitled to gamble at his expense without giving some reason for its actions?
I appreciate the fact that while defendant is the real party in interest the Fund, in the first instance, will have to pay the judgment. This gives it standing to be heard. In fact, N.J.S.A. 39:6-67 authorizes the Fund to appear *502 on behalf of defendant and in his name conduct his defense and take an appeal if thought desirable  "and all such acts shall be deemed to be the acts of such defendant." This statutory provision is comparable to a similar clause usually contained in policies of liability insurance permitting the insurance carrier to control the course of the litigation. If we were dealing with an insured defendant, there would be no problem. The insurance carrier would be gambling with its own money, and if the subsequent verdicts exceeded the policy limits, the insured could conceivably obtain relief against it for any excess. Whether such right exists for an uninsured defendant against the Fund is problematical.
And what about the infant plaintiff? The trial judge concluded he was entitled to the additur, and plaintiffs and defendant consented thereto; hence no fraud or abuse exists. In fact, a possible benefit exists to the Fund since its assets could be depleted by an additional $1,500, if the subsequent verdicts exceed $10,000. If the view of the majority is accepted, the injured plaintiff, for whose benefit the Fund Law was adopted, and who has indicated his willingness to accept the additur in order to avoid the trouble and expense of another trial, is bound by what may be the arbitrary action of the Fund.
I would remand with instructions that the Fund be ordered to show cause to the trial judge, on notice to all parties, why the additur should not be allowed.