110 N.J. Super. 191 (1970)
264 A.2d 757
UNSATISFIED CLAIM AND JUDGMENT FUND BOARD, PLAINTIFF,
v.
CONCORD INSURANCE CO., LENOX FINANCE CO., ETHEL ODERMAN AND CALVIN JOYNER, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided April 14, 1970.
*193 Mr. Martin L. Sisselman, Esq., for plaintiff (Messrs. James & Addas, attorneys).
*194 Mr. Sheldon A. Siegel, Esq., for defendant Concord Insurance Co. (Messrs. Goldberger, Siegel & Finn, attorneys).
Mr. Murray G. Simon, Esq., for defendant Lenox Finance Company, Ethel Oderman and Calvin Joyner (Messrs. Simon, Denstman & Noonan, attorneys).
TUMULTY, J.S.C.
This action comes before the court on a motion by the defendant Concord Insurance Company (Concord) for an order striking the complaint for reasons that will be set forth at length below. In order to determine the merits of this motion, it is necessary to set forth the facts preceding it. The question of law herein appears novel.
On or about December 24, 1968 Ethel Oderman was involved in an accident with Calvin Joyner. Prior to the accident Joyner had taken out a liability insurance policy with Concord for one year, effective January 19, 1968. The policy was financed by the Lenox Finance Company (Lenox), paid by it to Concord on behalf of Joyner. Sometime before the accident the premiums were not received by Concord and the policy was cancelled as of December 16, 1968, six days before the accident.
Mrs. Oderman subsequently brought suit in the county district court for damages sustained. When Joyner asked his carrier, Concord, to defend, it refused, claiming that the cancellation relieved it of this obligation. Mrs. Oderman, upon learning of the disclaimer, filed a notice of intention to make a claim with the Unsatisfied Claim and Judgment Fund Board (Fund), pursuant to N.J.S.A. 39:6-65. As a result, the present action was instituted by the Fund in the Superior Court, Law Division, for a declaratory judgment to determine whether it or Concord was the proper party to defend Joyner in the county district court suit. The Fund also brought a second count against Lenox for negligence in processing the finance payments, and for indemnification of any adverse judgment it might suffer as the result of such *195 negligence. This count charges that Joyner made each monthly payment to Lenox as it came due, and only because of Lenox's failure to forward it to Concord was there a lapse in the payment of the necessary premiums.
The motion before the court is in response to the declaratory judgment action of the plaintiff Fund. Defendant Concord is seeking to strike the complaint on the following grounds:
A. The Fund has no standing to bring this type of action;
B. It has other recourse, namely, to deny payment after a judgment is rendered, on the grounds that the judgment debtor was insured at the time of the accident;
C. Only the alleged insured or a qualifying third-party beneficiary can bring this type of action, and
D. Even if the Fund could properly seek such relief, the relief sought is the proper subject matter of the Chancery and not the Law Division.
The court is compelled to disagree with these contentions for various reasons. It is of the opinion that the best interests of justice will be served by the determination of this issue prior to, instead of after, the county district court matter is heard.
The issues raised will be more clearly understood if discussed individually rather than collectively. The court's attention is initially directed to the issue of jurisdiction.
There are two separate counts in the complaint before us. While the count we are basically concerned with is founded in equity, the other count is clearly founded in law. A strict reading of R. 4:3-1(a) (1) would indicate that if the court determines that the principal relief sought is equitable, the action should be brought in the Chancery Division.
However, our State Constitution (1947), Art. VI, § III, par. 4, gives to each Division of the Superior Court the power to exercise the functions of the other. It is well accepted that jurisdiction over one issue allows the court to decide as to all issues. A strict application of the rule *196 is not necessary, and the fact that legal relief is also being sought makes the question of jurisdiction moot for our purposes. See Curley v. Curley, 37 N.J. Super. 351 (App. Div. 1955); Hintenberger v. Garfield, 49 N.J. Super. 175 (Law Div. 1958) aff'd 52 N.J. Super. 526 (App. Div. 1958). It is noteworthy that in LeFelt v. Nasarow, 71 N.J. Super. 538 (Law Div. 1962), aff'd 76 N.J. Super. 576 (App. Div. 1962), certif. den. 39 N.J. 86 (1963), Le Felt v. Aetna Ins. Co., the very issue of declaratory relief was determined by the Appellate Division on review from the Law Division.
The next issue is whether the existence of a statutory remedy after judgment precludes the Fund from seeking equitable relief at this time. The court finds it does not. R. 4:42-3 states that "A judgment for declaratory relief, if appropriate, is not precluded by the existence of another appropriate remedy." See also Vonins, Inc v. Raff, 101 N.J. Super. 172 (App. Div 1968). Though the Fund has the right to deny payment after a judgment is entered, if declaratory relief is appropriate it can also avail itself of this remedy. The question is then reduced to one of "appropriateness."
A justiciable controversy between adverse parties must exist to warrant maintenance of a declaratory judgment action. N.J.S.A. 2A:16-50 et seq., 51, 53; Union Cty. Bd. of Chosen Freeholders v. Union Cty, Park Comm., 77 N.J. Super. 425 (Law Div. 1962), rev'd on other grounds 41 N.J. 333 (1964). Such a controversy exists where the court is asked to determine an insurer's liability. See Maryland Casualty Co. v. Pacific Coal and Oil Co., 312 U.S. 270, 61 S.Ct. 510, 85 L.Ed. 826 (1941). The requirement of a real controversy, as opposed to one which is merely hypothetical or speculative, is also satisfied by the issues sought to be adjudicated herein. N.J.S.A. 2A:16-55, In re Badenhop, 61 N.J. Super. 526 (Cty. Ct. 1960). A further requirement is that the declaration sought helps to terminate the controversy *197 between the parties. State Farm Mut. Automobile Ins. Co. v. Semple, 407 Pa. 572, 180 A.2d 925 (Sup. Ct. 1962). The Fund is obviously seeking such a result by bringing the action at this time, hoping to avoid the necessity of added litigation on the same issues after the county district court matter is heard.
The court's attention now focuses upon the major issue pertaining to the motion before it. This issue is basically two-fold. First, whether the Fund is an "interested party" for the purpose of bringing a declaratory action on an insurance contract? Secondly, whether the Fund has standing and interest for such an action under the statute creating it, N.J.S.A. 39:6-65 et seq.? This statute provides that the Fund is not obligated to make any payment until after an unsatisfied judgment is entered against an uninsured motorist. In the court's opinion, neither theory precludes the Fund from seeking declaratory relief.
Under the first theory defendant Concord contends that the Fund is not a proper party for the institution of such an action. The court cannot agree. In State v. Murtes, 232 La. 486, 94 So.2d 446, 447 (Sup. Ct. 1957), the word "interested" is defined, among other things, as being "liable to be affected or prejudiced." "Interest" generally means a concern which is more than mere curiosity, or academic or sentimental desire. State ex rel. Farmers Mut. Automobile Ins. Co. v. Weber, 384 Mo. 1159, 273 S.W.2d 318, 321 (Sup. Ct. 1954). There is no doubt the Fund will be affected or prejudiced by the outcome of the County district court action. Without the relief sought the Fund would be obligated to defend and control a suit needlessly. Once the Fund receives a notice of intention under N.J.S.A. 39:6-65 it acquires an interest in the action. Since N.J.S.A. 39:6-66 allows the Fund to assign to an insurer claims it deems "advisable to investigate," it must be given some safeguards against claims not thought to warrant such attention. Declaratory relief is just such a safeguard. Though the insured might also be a proper party to initiate this action, he is *198 not the only one who can do so. When the insured's policy is disclaimed and a notice of intention is filed with the Fund, it is required to undertake a defense on his behalf. By thus assuming the insured's obligations, the Fund should also be entitled to benefit from his rights. Even if it is said the Fund has nothing to gain or lose by this action, it would still be considered an "interested party" under Twigg v. Flynn, 68 F. Supp. 23, 24 (D.C. Fla. 1946), which stated:
A party to be an "interested party" in an action need not be one who may gain or lose something therein but the word has a broad meaning and includes all those who as parties have some control over the action, whether they will be individually affected thereby or not
The Fund should be allowed to maintain this type of action against an insurer who has disclaimed on a policy and thereby obligated the Fund to assume defense of the so-called "insured's" suit.
The heart of the Unsatisfied Claim and Judgment Fund Act is the Fund itself. It provides the wherewithal to compensate those victims of injury and damage who are left holding the empty bag of an unsatisfied judgment. The monies used to administer it are comprised of public funds, and the problem of red tape is a consideration in disbursement. Administrative and procedural safeguards are necessary for the protection of the Fund. The impatience of a claimant who has just suffered economic or family loss from an accident is understandable. Under such circumstances any delay would be considered to be unnecessary red tape. These funds are a last resort, not to be approached until all other legal remedies have been exhausted. Delay is necessary in order to exhaust all means of satisfying the judgment from sources other than the Fund and, naturally, in those cases where unjustified and excessive red tape does exist, it should be eliminated. For a concise treatise on this refer to Folmar, Unsatisfied Judgment Fund Legislation in the United States and Canada (New Mexico Legislative Council Service, 1960).
*199 An attempt to eliminate such unjustified and excessive red tape is a definite concern in this court's decision. If, as defendant Concord contends, the Fund, upon receiving the aforementionel notice of intention, has no recourse available until a final judgment is entered, undue delay, unnecessary expense and the multiplicity of suits would be unavoidable. The Fund would find itself compelled to undertake the responsibility of a defense and control a case that it conceivably should not. Then, when a judgment is finally entered, it would be forced to institute a subsequent suit to determine if it was even obligated to defend the action in the first place. The more desirable and efficient practice would be to allow the Fund to have its ultimate liability determined before the actual trial. This would avoid improper control, unnecessary delay and useless litigation.
Since the Fund is given the power under N.J.S.A. 39:6-67 to assign a claim to an insurer who may "take such other steps as it may deem appropriate on the behalf of and in the name of the defendant" pertaining to the defense of this claim, it is inconceivable that the Fund should be forbidden to take whatever steps are deemed appropriate by its preliminary investigation. When a claim is made which the Fund feels is without merit, for whatever the reason, it should not be rendered powerless to correct the situation until after a judgment is entered against it.
The court is unaware of any previous ruling in this State on issues similar to those before it at this time. There have, however, been analogous situations previously decided which have enlightened the court in its determination of the motion before it. In the case of Jamar v. Hodges, 107 N.J. Super. 495 (App. Div. 1969), the court held that the Fund had an equal right with the uninsured motorist to reject or accept an additur. This, of course, recognizes the existence of the Fund's interest prior to the final judgment. Even before Jamar, the court showed its awareness and concern for the Fund's welfare. In LeFelt, previously cited for other reasons, the court, in discussing the fact that a plaintiff must show *200 that the judgment debtor was uninsured at the time of the accident in order to obtain payment from the Fund, stated:
Resolution of that question before rather than after trial of the negligence action would be of benefit to all concerned. It would put the onus of trying the case, or settling it if that course is deemed desirable, on the party which would pay the judgment if one is recovered, whether that party be the Fund or either or both of the insurance companies. (Emphasis added)
For the reasons set forth herein, the motion of defendant Concord to strike the complaint is denied and the Fund therefore may properly proceed with its declaratory judgment proceeding. An appropriate order should be submitted.