112 N.J. Super. 210 (1970)
270 A.2d 731
DENNIS BEARS, AN INFANT, BY HIS GUARDIAN AD LITEM JANE RUFF, AND JANE RUFF, INDIVIDUALLY, PLAINTIFFS-APPELLANTS,
v.
PAUL WALLACE AND FRANCES WALLACE, DEFENDANTS, AND UNSATISFIED CLAIM AND JUDGMENT FUND BOARD, RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued November 9, 1970.
Decided November 17, 1970.
*211 Before Judges GOLDMANN, LEONARD and MOUNTAIN.
Mr. Robert C. Garofalo argued the cause for appellants (Messrs. Ryan, Foster & Garofalo, attorneys).
*212 Mr. Cornelius W. Caruso argued the cause for respondent (Messrs. Caruso & Caruso, attorneys; Mr. Stanley R. Bright, on the brief).
The opinion of the court was delivered by GOLDMANN, P.J.A.D.,
Plaintiffs appeal from the denial of their application for an order directing payment by the Unsatisfied Claim and Judgment Fund of judgments recovered against defendant Frances Wallace, the trial judge finding that they were obtained by fraud and collusion between the parties.
Dennis Bears, an infant, and Vincent Gugliotta were passengers in an automobile owned by Paul Wallace and allegedly operated by Frances Wallace when, on February 25, 1964, it ran into a steel light pole on Central Avenue, Orange. The infant, by his guardian ad litem Jane Ruff, and Jane Ruff individually, sued to recover for his injuries and medical expenses. Gugliotta also sued for his personal injuries. Both actions named Paul Wallace as the owner and Frances Wallace as the operator of the automobile, and charged negligence in its operation. Defendant Paul Wallace was let out of the case when he successfully moved for summary judgment against plaintiffs.
The consolidated actions came to trial before Judge Allcorn sitting with a jury. Counsel for the Unsatisfied Claim and Judgment Fund appeared and attempted to participate in the trial, but was not allowed to do so when plaintiffs' attorneys objected. Frances Wallace, the uninsured defendant, was represented by retained personal counsel. After four days of trial the jury returned the following verdicts against her: $10,000 for the infant Dennis, $4,671.30 for Jane Ruff, and $4,000 for Gugliotta.
Plaintiffs then respectively moved under N.J.S.A. 39:6-70 for payment of their judgments from the Fund. The matter was heard by Judge Allcorn and the motions denied.
At the hearing counsel for the Fund contended that there was ample evidence at the trial of collusion between the *213 parties; it was Gugliotta who had been driving the Wallace car and not Frances Wallace, so that the condition of N.J.S.A. 39:6-70 for payment out of the Fund was not satisfied. The statute requires that the applicant for payment show that he was not, at the time of the accident, operating an uninsured car.
Counsel for plaintiffs, on the other hand, argued that there was no showing by the Fund of any fraud or collusion, and that the court could not go behind the unanimous jury verdicts in plaintiffs' favor.
Judge Allcorn observed that the Fund had not had an opportunity to participate in the trial, and so could presently question whether plaintiffs were entitled to payment out of the Fund. It had the right to rely upon the proofs adduced at the trial, particularly those with respect to who had been operating the automobile at the time of the accident.
The judge stated that he had taken extensive notes during the course of the trial, had carefully reviewed them and had concluded that the claims were founded upon fraud and collusion. He said that having observed plaintiffs' demeanor throughout the trial, he was satisfied beyond any doubt that all of them had knowingly testified falsely when they said that Frances Wallace was driving the automobile at the time of the accident. And he was satisfied, beyond any doubt, that Gugliotta was in fact the driver. The judge pointed out that the police officer who arrived at the scene shortly after the accident had questioned the infant Bears, Gugliotta and Mrs. Wallace and each had told him Gugliotta had been driving. The officer had testified that upon arriving at the scene, he found Gugliotta behind the steering wheel. The hospital records of these three parties were introduced in evidence and the histories recorded therein stated that Gugliotta was the driver. The judge also observed that Gugliotta had suffered fractured ribs, a broken collarbone and damage to his mouth and teeth  injuries such as would be received by the driver of an automobile which struck a light *214 pole head-on rather than by someone in the front passenger's seat. By contrast, Mrs. Wallace had suffered nothing more than a fractured nose, cuts on her face and a sprained ankle, and she had suffered no injury to any area of her chest. These were not the kind of injuries a driver was likely to suffer in the circumstances.
N.J.S.A. 39:6-76 provides:
No claim against the fund shall be allowed in any case in which the court shall find, upon the hearing for the allowance of the claim, that the judgment upon which the claim is founded was obtained by fraud, or by collusion of the plaintiff and of any defendant in the action, relating to any matter affecting the cause of action upon which such judgment is founded or the amount of damages assessed therein.
This section of the Motor Vehicle Security-Responsibility Law (N.J.S.A. 39:6-23 et seq.) has not as yet been construed by our courts. The purpose of the Unsatisfied Claim and Judgment Fund is "to provide a measure of relief for persons who sustain losses or injury inflicted by financially irresponsible or unidentified owners or operators of motor vehicles, where such persons would otherwise be remediless" Corrigan v. Gassert, 27 N.J. 227, 233 (1958). Although the statute is to be liberally construed to advance the remedy, due regard must be given to protect the Fund against possible fraud or abuse. Giles v. Gassert, 23 N.J. 22, 34 (1955). In Douglas v. Harris, 35 N.J. 270, 279 (1961), our Supreme Court emphasized that the Fund must be protected from fraud and be administered "in a fashion to assure that only those persons legitimately entitled to participate in its benefits are paid therefrom. This is a duty imposed by public policy and owed to the contributors as well as the general public."
The policy of the statute, in requiring a hearing on an application for payment out of the Fund, is to protect the Fund against improper depletion "by the affirmative requirement that the applicant show at such hearing the existence of the conditions precedent specified by the statute, *215 regardless of anything which has taken place previously in the case." Minardi v. Nocito, 66 N.J. Super. 187, 193 (App. Div. 1961). We there held (at 194) that it was proper for this court to make independent findings of fact in such a situation, particularly so when the action upon which the claim for payment was based was not fully and fairly defended. Such was the case here: the Fund was not permitted to participate in the trial, and it is to be noted that defendants never moved for a new trial.
The thought expressed by Judge Kilkenny, writing for the court in Minardi, was more recently expanded by Judge Halpern in his dissent in Jamar v. Hodges, 107 N.J. Super. 495 (App. Div. 1969), a case dealing with the right of the Fund to be heard on the question of an additur that had been consented to by defendant uninsured motorist. He said:
A consideration of the Fund Law as a whole reveals a statutory scheme placing the ultimate decision for payment from the Fund, in most instances, upon the judiciary. The courts are the guardians of the trust money held in the fund. Szczesny v. Vasquez, 71 N.J. Super. 347, 358 (App. Div. 1962). It must hear all applications for the payment of judgments obtained against uninsured drivers. N.J.S.A. 39:6-69. It must be satisfied that the claimant (judgment creditor) has complied with all the conditions entitling him to payment; and the Fund is empowered to appear and be heard as to "why the order should not be made." N.J.S.A. 39:6-70. [at 500-501]
The same considerations that make it proper for an appellate court to make independent findings of fact in a Fund payment case (Minardi, above) support Judge Allcorn's right to have made such findings at an earlier stage of the case, and this in the exercise of a court's duty to protect the Fund from fraud and abuse.
We conclude that Judge Allcorn's determination is well supported by the very substantial and telling evidence present in the record. Accordingly, his denial of plaintiffs' application for an order directing payment by the Fund is affirmed.